**HORTON, OBERRECHT, KIRKPATRICK & MARTHA**
Cheryl A. Kirkpatrick, Esq. (SBN 149906)
Peter C.L. Chen, Esq. (SBN 246720)
3 Park Plaza, Suite 350
Irvine, CA 92614
PH: (949) 251-5100
FX: (949) 251-5104
Email: ckirkpatrick@hortonfirm.com / pchen@hortonfirm.com

Attorneys for Defendant Corona Seeds, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Agricola Cuyuma SA;<br>Corporacion Agricola Vinasol SAC;<br><br>　　　　　Plaintiffs,<br>v.<br><br>Corona Seeds, Inc.;<br><br>　　　　　Defendant. | **CASE NO. 2:17-cv-8220 DMG (SKx)**<br><br>**CORONA SEEDS, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>**[Filed Concurrently with Notice of Motion and Motion for Summary Judgment, of Alternatively, Partial Summary Judgment; Declaration of Steve Koike; Declaration of Peter C.L. Chen; [Proposed] Order]**<br><br>**District Judge: Hon. Dolly M. Gee**<br><br>**Date: December 20, 2019<br>Time: 3:00 p.m.<br>Courtroom: 8C, 8th Floor**<br><br>Complaint Served: December 21, 2017<br>Current Trial Date: February 11, 2020<br><br>Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Steve Kim |

　　　Pursuant to Federal Rules of Civil Procedure Rule 56 *et seq.* and Local Rule 56 *et seq.*, defendant Corona Seeds, Inc. ("CORONA") submits this separate statement of uncontroverted facts and conclusions of law, together with references to evidence in

1

support of CORONA's motion for summary judgment, or alternatively, partial summary judgment, against plaintiffs Agricola Cuyuma SA ("CUYUMA") and Corporacion Agricola Vinasol SAC's ("AVSA") (collectively "PLAINTIFFS") third amended complaint, as follows:

### CORONA SEEDS, INC.'S UNCONTROVERTED FACTS AND EVIDENCE

| Corona Seeds, Inc.'s Undisputed Facts: | Corona Seeds, Inc.'s Supporting Evidence: |
|---|---|
| 1. The subject seeds CORONA sold to PLAINTIFFS were supplied by CRITES, a seed supplier / manufacturer. CRITES placed the subject seeds in bags provided by CORONA, sealed the bags, and sent them to CORONA. | See Exhibit "A" attached to Declaration of Peter C.L. Chen ("Chen Dec.") (Deposition of Michael Newman ("Newman Depo.") (35:23-25; 36; 37:1-11)<br><br>See Exhibit "B" attached to Chen Dec.<br><br>See Exhibit "C" attached to Chen Dec. (Deposition of Andy Johnson ("Johnson Depo.") (40:20-25; 41:19)<br><br>See Exhibit "D" attached to Chen Dec. (Crites 000008). |
| 2. The subject seeds were tested by Eurofins, a third-party testing agency, prior to shipment. The results indicated that a test of the sample pulled from Lot C242606, as of November 2015, had a germination rate of 87%. | See Exhibit "C" attached to Chen Dec. (Johnson Depo (40:20-25; 41:19)<br><br>See Exhibit "D" attached to Chen Dec. (Crites 000007). |
| 3. CRITES affixed a label to the bags, indicating that, as of November 2015, the germination rate was 87% as to the tested samples. | See Exhibit "B" attached to Chen Dec. (Bag; Exhibit 3 to Newman Depo.)<br><br>See Exhibit "C" attached to Chen Dec. (Johnson Depo (40:20-25; 41:19)<br><br>See Exhibit "D" attached to Chen Dec. (Crites 000007). |
| 4. The seeds were then treated with a fungicide called Thiram, bagged, sealed, and shipped to CORONA. | See Exhibit "A" attached to Chen Dec. (Newman Depo. (95:2-6) |

| | | |
|---|---|---|
| 1 2 | | See Exhibit "C" attached to Chen Dec. (Johnson Depo (42:15-24) |
| 3 4 5 | 5. After the subject seeds were shipped to CORONA, CRITES performed germination testing on retained samples treated with Thiram. Testing revealed that germination dropped. | See Exhibit "C" attached to Chen Dec. (Johnson Depo (41:17-25, 42, 43, 44:1-23) |
| 6 7 8 9 10 11 12 13 | 6. CRITES, however, did not communicate the lowered germination figures to CORONA until *after* AVSA communicated concerns with the seed's germination in late May 2016. | See Exhibit "C" attached to Chen Dec. (Johnson Depo (41:17-25, 42-44, 45:1-18, 72:19-22; 105:17-20)<br><br>See Exhibit "D" attached to Chen Dec.<br><br>See Exhibit "A" attached to Chen Dec. ("Chen Dec.") (Newman Depo. (95:2-6)<br><br>See Exhibit "E" to Chen Dec. (Deposition of Oscar Alban ("Alban Depo") (111:10-13) |
| 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | 7. This test indicates only that, as of the time of testing, and on the tested seeds, that 87% of the seeds germinated under laboratory conditions. The germination rate of 87% does not indicate that 87% of the seed would germinate under "real world" field conditions, as germination is affected by a multitude of factors after the seed is received by the grower, including but not limited to: 1) seed storage and handling; 2) length of storage; 3) transportation; 4) ground preparation; 5) planting method; 6) irrigation and soil moisture; 7) weather and environment; 8) application of chemicals; 9) non-emergence factors due to damage by soil-borne insects or infection by soil-borne pathogens; 10) seed predation; and 11) mis-diagnosis of post-emergence problems as seed germination issues. Laboratory germination rate is not a guarantor nor is it intended to mean that | See Declaration of Steve Koike ¶ 5<br><br>See Request for Judicial Notice (Exhibit "A – C") |

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

| | |
|---|---|
| all seeds from that particular lot will actually germinate at the rate tested. | |
| 8. AVSA is a commercial grower and exporter of agricultural produce in Peru and has been in business since 2001. | See Exhibit "E" to Chen Dec. (Alban Depo (14:12-25; 15:1) |
| 9. AVSA placed an order for certain seeds, including Sapphire seeds from Lot C242606, from CORONA in January 2016 for $26,400. | See Exhibit "F" attached to Chen Dec. |
| 10. The subject seeds were treated with Thiram. | See Exhibit "E" to Chen Dec. (Alban Depo (65:18-25)<br><br>See Exhibit "F" attached to Chen Dec. |
| 11. No one from AVSA or CORONA discussed germination rates for the subject seeds at any point during the purchase / sale process. | See Exhibit "E" to Chen Dec. (Alban Depo (69:9-15; 110:14-17)<br><br>See Exhibit "F" attached to Chen Dec. |
| 12. The invoice for the sale of the subject seeds contained the following language: "NOTICE TO BUYER-PLEASE READ BEFORE PLANTING GUARANTEE AND EXPLANATION OF GUARANTEES; LIMITATION OF DAMAGES Corona Seeds, Inc. warrants that seeds are labeled as required by law and within the tolerances set forth on the label. CORONA SEEDS AND ITS SUPPLIERS MAKE NO OTHER EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. The recommendations for the use of these products are based on the best recommendation and judgment of the personnel of Corona Seeds and its suppliers, without having any guarantee of results obtained in relation to these varieties. The Buyer guarantees that he / she is a farmer of a nursery with experience in the use of seeds. The new | See Exhibit "F" attached to Chen Dec. |

| | |
|---|---|
| varieties must be tested to see their adaptability before commercial use. The descriptions and pictures of advertising will be used only as a guide and do not constitute any guarantee.<br>LIMITATION OF LIABILITY: The exclusive remedy for losses or damages for breach of the previous warranty or for negligence or otherwise, is limited to the purchase price of the seed and will not include the consequential damages. Claims for defects in this product must be submitted to Corona Seeds as soon as possible to allow Corona Seeds to investigate the complaint and, within 30 days after discovery.  If the seed is transferred to a third party, a warning similar to this will be obtained, and Corona Seeds will be free of damages and will be compensated for damages caused by this transfer.<br>DISEASES: Some plant diseases are transmitted by seeds. Unless otherwise indicated in writing, no seeds have been tested for diseases transmitted by seeds. The test can be done at the request of the buyer at an additional cost." | |
| 13. The bag contains the same language. | See Exhibit "B" attached to Chen Dec. |
| 14. A label affixed to the bag states the following:<br><br>"WARRANTY AND DISCLAIMER OF WARRANTIES: Seller warrants that this product has been labeled as required by law and that it conforms to the label description, SELLER MAKES NO OTHER EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR | See Exhibit "G" attached to Chen Dec. |

| | | |
|---|---|---|
| | OTHERWISE. Any recommendations for the use of this product or materials or apparatus in connection therewith are based upon Seller's best judgment but there is no warranty of results to be obtained in connection therewith. LIMITATION OF LIABILITY: The exclusive remedy for loss or damage due to breach of the foregoing warranty or contract or for negligence or other cause shall be limited to return of purchase price of this product and shall not include consequential damages. Claims for defects in this product must be presented to Seller as soon as practicable to enable Seller to investigate and in any event within thirty days after discovery." | |
| | 14. AVSA does not dispute the terms of the provision above. The invoice was signed by a person with authority to enter into such contracts at AVSA. | See Exhibit "E" to Chen Dec. (Alban Depo (64:12-25; 65-68; 69:1-8) See Exhibit "F" attached to Chen Dec. |
| | 15. Once the seeds arrived in Peru, they go into quarantine with a government agency entitled SENASA. The seeds were released by SENASA to AVSA after it cleared quarantine. | See Exhibit "E" to Chen Dec. (Alban Depo (73:14-25; 74:1-9) |
| | 16. AVSA did not perform a germination test prior to planting the seeds. AVSA did not test the seeds for disease prior to planting. AVSA did not test-plant the seeds. | See Exhibit "E" to Chen Dec. (Alban Depo (48:19-25, 49:1-25) |
| | 17. Sometime after planting, AVSA contends germination-related issues arose. AVSA performed in-house germination testing on certain Sapphire seeds in Lot C242606. | See Exhibit "H" attached to Chen Dec. (TAC ¶ 26) |
| | 18. On May 25, 2016, AVSA advised CORONA of issues with germination. | See Exhibit "E" to Chen Dec. (Alban Depo (101:7-9) |
| | 19. CORONA sent samples of C242606 to an independent laboratory for testing. | See Exhibit "A" attached to Chen Dec. (Newman Depo. (86:7-25; 87:1-15) |

6

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

| | | |
|---|---|---|
| | 20. AVSA attempted to find replacement Sapphire seeds but was unable to. | See Exhibit "A" attached to Chen Dec. (Newman Depo. (91:24-25, 92:1-22) See Exhibit "I" attached to Chen Dec. (Page 3) |
| | 21. To account for lowered germination, CORONA recommended planting the Sapphire seeds at a 3-to-1 ratio. CORONA did so after discussing with CRITES. | See Exhibit "A" attached to Chen Dec. (Newman Depo. (91:24-25, 92:1-22) See Exhibit "C" attached to Chen Dec. (Johnson Depo (109:12-24) |
| | 22. Importantly, the only issue CORONA was made aware of was germination and nothing else. | See Exhibit "H" attached to Chen Dec. (TAC ¶ 39) |
| | 23. CORONA was able to secure replacement Sapphire seeds of a different lot from CRITES and these replacement Sapphire seeds were sent to AVSA on May 26, 2016, arriving in Peru on June 10, 2016. | See Exhibit "H" attached to Chen Dec. (TAC ¶ 36) See Exhibit "J" attached to CHEN DEC. |
| | 24. In sending the replacement seeds, CORONA entered into an agreement with AVSA, wherein if testing of the subject seeds exceeded 85%, then AVSA would agree to pay for the replacement seeds. | See Exhibit "A" attached to Chen Dec. (Newman Depo. (91:24-25, 92:1-22) |
| | 25. CORONA did not charge AVSA for the replacement seeds. | See Exhibit "J" attached to CHEN DEC. |
| | 26. CUYUMA is a commercial grower and exporter of agricultural produce in Peru. | See Exhibit "K" attached to Chen Dec. (Deposition of Angello Flores ("Flores Depo") (10:19-25; 11:1-6) See Exhibit "H" attached to Chen Dec. (TAC ¶ 2) |
| | 27. CUYUMA placed an order for certain seeds, including Sapphire seeds from lot C242606, with CORONA in March 2016. The purchase price of the seeds was $20,515. The seeds were shipped by ocean freight on March 25, 2016. | See Exhibit "L" attached to Chen Dec. |
| | 28. No one from CUYUMA or CORONA discussed germination rates for the subject seeds at any point during the | See Exhibit "K" attached to Chen Dec. (Flores Depo (26:11-14) |

7

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

| | | |
|---|---|---|
| | purchase / sale process | |
| | 29. "NOTICE OF DISCLAIMER OF WARRANTY, LIMITATION OF DAMAGES & INDEMNITY: Seller and its vendors disclaim any warranty whether express or implied of MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OF WARRANTY BY SAMPLE.  Damages shall be exclusively LIMITED TO THE PURCHASE PRICE of the seed. If seed is transferred to another party Buyer shall indemnify, defend and hold Seller harmless from any claims. DISEASES: Many diseases are seedborne. Unless specifically stated, no seed has been tested for disease. Testing is available for additional charge." | See Exhibit "L" attached to Chen Dec. |
| | 30.  CUYUMA does not dispute the terms of the provision above. The invoice was signed by a person with authority to enter into such contracts at CUYUMA. | See Exhibit "K" attached to Chen Dec. (Flores Depo (24:9-25, 25:1-21)  See Exhibit "L" attached to Chen Dec. |
| | 31.  CORONA advised CUYUMA of the germination issues, as CORONA had received the results of testing prompted by AVSA's communication regarding germination issues. | See Exhibit "A" attached to Chen Dec. (Newman Depo. (86:7-25; 87:1-15)  See Exhibit "K" attached to Chen Dec. (Flores Depo (45:6-24) |
| | 32.  As the only issue known to CORONA at that time was germination-related, and there were no available replacement seeds, CORONA recommended planting at a 3-to-1 ratio to account for the lower germination rates. | See Exhibit "K" attached to Chen Dec. (Flores Depo (45:6-25, 46)  See Exhibit "H" attached to Chen Dec. (TAC ¶ 39) |
| | 33.  CORONA sent replacement seeds to CUYUMA for free. | See Exhibit "K" attached to Chen Dec. (Flores Depo (47:3-23) |
| | 34.  PLAINTIFFS contend in their TAC that test results from SENASA indicated the presence of a fungi called Stemphylium Sarciniforme on the fruits, and not the seeds, of Lot C242606 on November 8, 2016.  Thus, by their own | See Exhibit "H" attached to Chen Dec. (TAC ¶ 39) |

8

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

| | | |
|---|---|---|
| | admission, any potential notice of disease, to the extent Stemphylium Sarciniforme is a disease, could not have been any earlier than November 8, 2016 | |
| 35. | PLAINTIFFS also refer to a test performed by SGS, which identified the presence of four types of fungi (Pantoea sp., Enterobacteriacese, Erwinia sp., and Acinetobacter sp.) and bacteria (Stemphylium sp., Alternaria sp., Cladosporium sp., Fusarium oxysporum, Sclerotinia sp., Cryptococcus victoriae, Thanalephorus cucumeris, and Pythium sp.). | See Exhibit "M" attached to Chen Dec. |
| 36. | PLAINTIFFS also refer to two tests performed by a Dr. Luz Leonor Mattos Calderon on samples of the subject Sapphire Seeds (at the behest of AVSA & CUYUMA), which purportedly revealed the presence of a bacteria called Pseudomonas syringae pv. psi | See Exhibit "N" attached to Chen Dec.<br><br>See Exhibit "O" attached to Chen Dec. |
| 37. | With respect to the Stemphylium Sarciniforme, this is a "mold" type of fungus that commonly grows on dead organic matter and can be spread via spores in the air. While this fungus can be a contaminant on the outside surfaces of large sized seeds, such as pea seeds, it *does not* infect the pea and does not cause any problems to pea seeds. This fungus can grow as a secondary colonizer on plant tissues damaged by factors such as weather extremes, insect feeding, senescence and decline of the plant, high salts and other field problems, and damage caused by production practices. Stemphylium sarciniforme is common around the world, including Peru. Importantly, Stemphylium sarciniforme is *not pathogenic* to peas | See Koike Dec. ¶. 6 |
| 38. | SGS-Portugal performed testing on | See Exhibit "M" attached to Chen Dec. |

| | |
|---|---|
| seeds from the subject lot in April 2017. The testing methodology was "next generation sequencing," or "NGS." The NGS test consists of a high-level DNA analysis of the object tested. However, NGS testing does not provide any information on whether the DNA is alive or dead. The presence of a particular fungus or bacterium, which was killed or otherwise died prior to planting, can and will show up in an NGS test. In short, there is no way to discern between "dead" DNA versus "live" DNA. Since NGS is only detecting DNA, the test does not indicate if the actual fungus or bacterium was even present. | See Koike Dec. ¶. 7 |
| 39.  None of the detected bacteria in the SGS-Portugal test are pathogenic to peas. In fact, all bacteria identified in the test are all around us, found in soil, hands, dust, etc. As for three of the fungi identified, Stemphylium sp., Alternaria sp., and Cladosporium sp., these are common mold and not pathogenic to peas. Cryptococcus victoriae is a yeast that is not pathogenic to peas.  As for Fusarium oxysporum, only one (1) strain out of hundreds is pathogenic to peas – the test provides no information on the specific strain.  Fusarium oxysporum is also a soil-borne fungi.  Sclerotina sp. is also a soil-borne fungi and only species outs of hundred are pathogenic.  The testing did not reveal the specific species. Thanatephorus cucumeris and Pythium can be pathogenic to peas but both are soil-borne. Notably, soil-borne fungi are pathogenic only if the contact is through soil.  The presence of soil-borne fungi on seeds generally suggests that the fungi is dead or inactive.  As indicated above, | See Exhibit "M" attached to Chen Dec.<br><br>See Koike Dec. ¶. 7 |

| | |
|---|---|
| NGS testing does not identify whether any of the bacteria or fungus were alive – it merely identifies it was present at some point in time. | |
| 40. As for the phytopathological testing performed by Dr. Calderon, it should be noted at the outset that no fungi that is pathogenic to peas was detected. With respect to the bacteria found, the testing methodology used does not conform to international standards. The method used by Dr. Calderon is likely to lead to misleading results. The method Dr. Calderon used does not permit the recovery and isolation of bacteria. Similarly, injecting the bacteria into other plants is inappropriate because it actually increases the likelihood of soft rot bacteria and soft rot bacteria species. Ultimately, the presence *Pseudomonas syringae pv. psi* was detected was faulty. | See Exhibit "N" attached to Chen Dec.<br><br>See Exhibit "O" attached to Chen Dec.<br><br>See Koike Dec. ¶. 8-9 |

## CONCLUSIONS OF LAW

1. No express warranties were made by CORONA because PLAINTIFFS never spoke to CORONA about germination at any point during the transaction. The label indicates that testing was done in November 2015 on samples taken from Lot C242606, and that testing indicated germination of 87% in a laboratory is indicative of solely that – testing on a sample in November 2015 indicated 87% germination, and nothing more. *Cal. Commercial Code ("CCC")* § 1213.

2. CORONA is allowed to disclaim warranties because 1) the parties never discussed germination as part of the sales of the subject seeds and 2) the 87% germination rate test result is solely intended to convey that the samples of seeds from Lot C242606 were tested in November 2015 and that the tested seeds had a germination rate of 87%. The 87% germination does not convey or otherwise guarantee that the seeds will actually germinate at 87%. Furthermore, CORONA

11

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

was completely unaware of the diminished germination level because CRITES never communicated such information until late May 2016, well after the sale had completed.  *CCC* § 2316

3. Enforcement of the limitation of remedy provides PLAINTIFFS with the remedy of the purchase price of the seed. PLAINTIFFS were sent replacement seeds at no charge, enjoying the benefit of the limitation of remedies clause. Germination rate cannot be considered a latent defect as commercial growers such as PLAINTIFFS have the ability to conduct such testing prior to planting. . There is no reason why PLAINTIFFS, commercial growers and exporters, could not have tested the seeds for germination prior to planting.  This is especially true in light of the fact that AVSA did in fact perform in-house germination testing after planting.  The limitation of liability clause are enforceable. *Nat'l Rural Tele. Coop. v. DIRECTV, Inc.* (C.D. Cal 2003) 319 F.Supp.2d 1040, 1048; *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1533.

4. The disclaimer language is conspicuous. The evidence is undisputed that the parties never discussed germination as part of the sale.  The evidence is also undisputed that CORONA had no way of knowing that post-sale germination testing by CRITES revealed lowered germination rates.  As indicated above, CRITES did not divulge this information to CORONA until after AVSA advised of germination-related issues in late May 2016.  Thus, there can be no intentional or negligent misrepresentation. *CCC* § 2316(2).

5. Neither the Federal Seed Act (§ 1571) nor California Seed Law (§ 52452; 54281) require that the seeds actually germinate at that actual percentage – it merely requires that identifying information be provided in conformance with the statutes.

6. CORONA had every reasonable ground to believe that the germination test of 87% was accurate.  The test was performed was an independent laboratory and there was no reason for CORONA to believe that the test was inaccurate or improperly

performed. CORONA'S first notice of any germination issues was in late May 2016, when AVSA informed CORONA of such. *California Civil Code* § 1710; *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407-408.

7. With respect to the 3-to-1 planting claim, this allegation makes little sense because the only issue known to the parties at that time was low germination. As replacement seeds could not be obtained in time, planting at a heavier ratio would appear to counter-act low germination. In addition, as the germination figures was known to all after May 2016, and the 3-to-1 recommendation was made after that time, PLAINTIFFS cannot claim reasonable reliance as they already knew of the lowered germination numbers. *California Civil Code* § 1710; *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407-408.

8. It was not foreseeable to CORONA that the application of Thiram would somehow decrease the germination rate of the seed. It is also not foreseeable to CORONA that CRITES inexplicably failed to communicate the decreased germination. Similarly, because germination relies on a host of factors outside CORONA's control, the type of harm alleged by PLAINTIFFS is simply not foreseeable. *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1143; *Rowland v. Christian* (1968) 69 Cal.2d 108, 112.

9. PLAINTIFFS allege they suffered injury but there is no demonstrable evidence demonstrating the closeness of CORONA's conduct to the harm suffered. In addition, there is no moral blame to CORONA's conduct as CORONA had no reason to doubt the germination test and was not apprised of the post-treatment developments until much later. The policy of preventing future harm should not fall on CORONA's shoulders under these circumstances. It would also create a significant burden to CORONA if it was forced to guarantee that seeds actually germinate at the rate tested because it would completely absolve a plaintiff of any

responsibility. *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1143; *Rowland v. Christian* (1968) 69 Cal.2d 108, 112.

DATED:  November 13, 2019          HORTON, OBERRECHT, KIRKPATRICK & MARTHA

By: _____
    Cheryl A. Kirkpatrick
    Peter C.L. Chen
    Attorneys for Corona Seeds, Inc.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: HORTON, OBERRECHT, KIRKPATRICK & MARTHA, 3 Park Plaza, Suite 350, Irvine, California 92614.

On November 15, 2019, I served the foregoing document described as: **Corona Seeds, Inc.'s Separate Statement of uncontroverted Facts and Conclusions of Law,** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated on the attached service list:

[ ]   **BY MAIL** – I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited   with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than (1) day after the date of deposit for mailing in affidavit.

[ X ]   **BY ELECTRONIC TRANSMISSION** – I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) indicated.

[ ]   **BY OVERNIGHT DELIVERY** – I deposited such envelope for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages  for overnight delivery by Federal Express. They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

[ X ]   (Federal)     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 15, 2019, at Irvine, California.

_____
Crystal Thompson

15

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

# SERVICE LIST

Agricola Cuyuma SA v. Corona Seeds, Inc., et al.
United States District Court Central District of California: 2:17-cv-8220 DMG (SKx)

| | |
|---|---|
| Panda Kroll, Esq.<br>Law Offices of Panda Kroll<br>5999-B Ridgeview Street<br>Camarillo, CA 93012<br>Phone: (805) 764-0315; Fax: (805) 764-0339<br>Email: pkroll@pandakrollesq.com | Co-Counsel for Defendant Corona Seeds, Inc. |
| Bruce Alan Finck, Esq.<br>BENTON, ORR, DUVAL & BUCKINGHAM<br>39 N. California Street<br>Ventura, CA 93001<br>Phone: (805) 648-5111; Fax: (805) 648-7218<br>Email: bfinck@bentonorr.com | Counsel for Defendant Corona Seeds, Inc. |
| Brian Nomi, Esq.<br>Law Office of Brian Nomi<br>215 E. Daily Drive, Suite 28<br>Camarillo, CA 93010<br>Phone: (805) 444-5960<br>Fax: (805) 357-5333<br>Email: briannomi@yahoo.com | Co-Counsel for Plaintiffs Agricola Cuyuma SA and Corporacion Agricola Vinasol S.A.C. |
| Eduardo Ayala Maura, Esq.<br>Ayala Law P.A.<br>1390 Brickell Avenue, Suite 335<br>Miami, FL 33131<br>Phone: (305) 570-2208<br>Fax: (305) 305-7206<br>Email: eayala@ayalalawpa.com | Co-Counsel for Plaintiffs Agricola Cuyuma SA and Corporacion Agricola Vinasol S.A.C. |
| Dale Dorfmeier, Esq.<br>PETRIE, LEATH, LARRIVEE & O'ROURKE, LLP<br>6051 N. Fresno Street, Suite 110<br>Fresno, CA 93710<br>Tel: (559) 498-6522<br>Email: ddorfmeier@pllolegal.com | Counsel for Crites Seed, Inc. |

**SEPARATE STATEMENT OF UNCONTROVERTED FACTS**