JASON F. MEYER (SBN: 190800)
jmeyer@grsm.com
J. TODD KONOLD (SBN: 222616)
tkonold@grsm.com
LISA G. TAYLOR (SBN: 156381)
ltaylor@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7767
Facsimile: (619) 696-7124

Attorneys for Defendant
CRITES SEED, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Agricola Cuyuma SA; Corporacion Agricola Vinasol SAC;<br><br>Plaintiff,<br><br>vs.<br><br>Corona Seeds, Inc., et al.<br><br>Defendants. | CASE NO. 2:17-cv-8220-DMG (SKx)<br><br>**DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4**<br><br>Complaint Served: December 21, 2017<br>Trial Date: April 28, 2020<br><br>Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Louise LaMothe |

Defendant Crites Seed, Inc. (hereinafter "Crites") submits the following Memorandum of Contentions of Fact and Law, pursuant to Local Rule 16-4.

## I. INTRODUCTION

The tort causes of action asserted against Crites in the captioned matter arise out of a dispute over sugar snap pea seeds grown, cleaned, and stored, at Crites' direction, at its facility in Washington State. A portion of these seeds, a sugar snap variety known as "Sapphire," were sold by Crites to its co-defendant, Corona Seeds, Inc. (hereinafter "Corona") early in 2016. The Sapphire seeds Crites sold to Corona were not manufactured by Crites for any particular customer; they were

-1-
DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

simply a part of Crites' existing inventory in 2016. Crites did not exercise control over where the Sapphire seeds went, or where they were ultimately planted, once they left Crites' facility on their way to Corona.

In fact, the seeds were purchased by Corona in order to fulfill Corona's contracts with two agricultural concerns located in Peru: plaintiffs Agricola Cuyuma SA (hereinafter "Cuyuma") and Agricola Vinasol SAC (hereinafter "AVSA"). Cuyuma and AVSA had ordered Sapphire pea seeds from Corona early in 2016 for use during their 2016 planting season. Evidence introduced at trial will demonstrate that the contracts between Corona, on the one hand, and Cuyuma and AVSA, on the other, are the only contractual relationships at issue in this case. There has never been a contractual relationship between Crites and either Cuyuma or AVSA; in fact, there is no evidence that Crites was aware of the existence of Cuyuma and/or AVSA prior to 2016.

The Sapphire seeds purchased by plaintiffs made their way to plaintiffs' leased farmland over the course of several months. Evidence introduced at trial will demonstrate that Crites had no control over the transportation arrangements made with respect to the seeds; some of the seeds were transported by ocean freight, and some were shipped by air. Once they reached Peru, the seeds were quarantined as required by Peruvian law, and checked for pathogens; the seeds were released from quarantine in Peru without issue. After release from quarantine, the seeds were transported by plaintiffs to their leased plots of farmland, which were scattered along the western coast of Peru. There is no evidence in this case that plaintiffs owned the land on which they intended to plant the Sapphire seeds.

Evidence introduced at trial will demonstrate that, once plaintiffs received the Sapphire seeds, they did not take the reasonable precaution of engaging in test-planting. Planting a small number of the Sapphire seeds prior to widespread sowing would have been reasonable because: (1) this was a new variety of pea

1 seeds which neither plaintiff had purchased/planted before, and (2) Cuyuma, in
2 particular, had never planted peas of any variety prior to the 2016 growing season.
3 There is evidence that plaintiffs may have treated the Sapphire seeds with various
4 fungicides/other chemicals prior to planting them – Crites had no control over, and
5 no knowledge of, the treatments applied by plaintiffs to the seeds in Peru.

6 After planting, the seeds did not perform as expected by Cuyuma and
7 AVSA; this damage is at the heart of the claims asserted by both plaintiffs. In a
8 very general sense, Cuyuma and AVSA claim that the seeds did not germinate (or
9 sprout) at the rate Cuyuma and AVSA allegedly expected, leading to lower-than-
10 anticipated crop volume.[1] Plaintiffs' claim in this regard is manifestly one of
11 *purely economic loss*: the seeds did not do what plaintiffs expected them to do,
12 thereby diminishing the value of *plaintiffs' contract with Corona*, and depriving
13 plaintiffs of the benefit of their bargain with Corona.

14 The nature of the damages claimed by plaintiffs herein is important because:
15 plaintiffs cannot recover *contract damages* against Crites, an entity with which it
16 has never had a contractual relationship. *Nada Pac. Corp. v. Power Eng'g &*
17 *Mfg.*, 73 F.Supp.3d 1206, 1221 (N.D. Calif. 2014). The vast majority of the
18 damages plaintiffs claim in this case are contract damages: pea seeds which did
19 not produce plants of the expected value leading to low crop yields, costs
20 associated with obtaining replacement pea seeds when the Sapphire seeds failed to
21 sprout as anticipated, costs associated with the additional labor required to re-plant
22 fields with replacement seed, lost profits as the result of the forgoing, and lost
23 contracts resulting from plaintiffs' inability to fill their customers' orders. *Id.* at
24 pp. 1221 – 1222.
25 / / /

---

[1] While Crites anticipates that plaintiffs will devote a good amount of their time and energy at trial to germination rates recorded with respect to the Sapphire seeds sold by Crites to Corona, any and all evidence introduced on this topic is utterly irrelevant to plaintiffs' claims with respect to Crites. Germination rates have nothing to do with the "infection" plaintiffs claim the Sapphire seeds carried from Washington to Peru; testing seeds for their germination rate reveals nothing about whether or not the seeds carry any alleged pathogen.

-3-
DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Plaintiffs, aware that their relationship with Crites is both distant and non-contractual, alleged only *tort claims* against Crites: negligence and strict products liability. But, under California law, plaintiffs cannot recover contract damages *via* claims that sound purely in tort. *Agricola Baja Best v. Harris Moran Seed Co.*, 44 F.Supp.3d 974, 986 – 987 (S.D. Calif. 2014). Plaintiffs attempt to evade the economic loss rule by alleging that the Sapphire seeds somehow carried bacteria, fungi, and other pathogens all the way from Crites' facility in Washington to plaintiffs' leased farmland in Peru, and "infected" adjacent plots of non-Sapphire plants[2], to the detriment of those plants. This allegation of damage to property other than the Sapphire seeds themselves, while sufficient to permit plaintiffs to proceed with their tort claims against Crites, will be shown to be unsupported by the evidence introduced at trial. In addition, allegation of damage to property other than the product at issue in plaintiffs' tort claims against Crites does not somehow permit plaintiffs to re-graft their contract damages to said tort claims.

## II. THE PARTIES' CLAIMS AND DEFENSES [L.R. 16- 4.1]

### A. Summary of Plaintiffs' Claims and Elements Required to Establish Plaintiffs' Claims [L.R. 16 – 4.1(a) and (b)]

In their Third Amended Complaint, both Cuyuma and AVSA allege two identically-pleaded causes of action against Crites, for (1) Strict Products Liability and (2) Negligence.

**Claim 1: Strict Products Liability**

Summary: Plaintiffs claim that the Sapphire pea seeds they purchased from Corona were defectively manufactured, in that they (a) were contaminated with bacteria and/or fungi, and (b) had a germination rate lower than 87%.

Elements: Plaintiffs have the burden of proving that:

1. Crites manufactured, distributed, or sold the Sapphire pea seeds;

---

[2] Plaintiffs have claimed at various times that the adjacent plots of land themselves were "infected" by the Sapphire seed, but there is no evidence that plaintiffs owned any of the land involved in the 2016 growing season.

-4-

DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

2. The seeds contained a manufacturing defect when they left Crites' possession;

3. Plaintiffs' property other than the Sapphire pea seeds themselves was physically harmed; and

4. The seeds' defect was a substantial factor in causing harm to Plaintiffs' other property.

Source:

- CACI 1201

- *Nada Pacific Corp. v. Power Eng'g & Mfg.*, 73 F.Supp.3d 1206, 1221 – 1223 (N.D. Calif. 2014)

- *Agricola Baja Best v. Harris Moran Seed Co.,* 44 F.Supp.3d 974, 986 – 988 (S.D. Calif. 2014)

- *Livermore Amador Valley Wastewater Management Agency v. Northwest Pipe & Casting Co.*, 915 F.Supp. 1066, 1069 – 1074 (N.D. Calif. 1995)

- *City of San Diego v. Amoco Chem. Co.*, 1999 U.S. Dist. LEXIS 24184 *, 3 – 8 (S.D. Calif. 1999)

**Claim 2: Negligence**

Summary: Plaintiffs claim that Crites was negligent in the manufacture of the Sapphire pea seeds, causing them to become contaminated with bacteria and/or fungi, and also causing them to have a low germination rate.

Elements: Plaintiffs have the burden of proving that:

1. Crites was negligent in its manufacture of the pea seeds;

2. Plaintiffs' property other than the Sapphire pea seeds themselves was physically harmed; and

3. Crites' negligence was a substantial factor in causing harm to Plaintiffs' other property.

Sources:

- CACI 400

- *Nada Pacific Corp. v. Power Eng'g & Mfg.*, 73 F.Supp.3d 1206, 1221 – 1223 (N.D. Calif. 2014)
- *Agricola Baja Best v. Harris Moran Seed Co.,* 44 F.Supp.3d 974, 986 – 988 (S.D. Calif. 2014)
- *Livermore Amador Valley Wastewater Management Agency v. Northwest Pipe & Casting Co.*, 915 F.Supp. 1066, 1069 – 1074 (N.D. Calif. 1995)
- *City of San Diego v. Amoco Chem. Co.*, 1999 U.S. Dist. LEXIS 24184 *, 3 – 8 (S.D. Calif. 1999)

### As to Both Claims:  Damages (Economic Loss Rule)

Summary:  Pursuant to the economic loss rule, plaintiffs must prove that they sustained damage to property they owned *other than* the product at issue (the Sapphire pea seeds and the pea plants which grew from them), in order to recover on their tort claims against Crites.  Plaintiffs cannot recover *in tort* for injuries which fall solely within the category of "economic loss" – damages for diminished value of the product at issue, costs of repair/replacement, lost profits, etc.

Elements:  Plaintiffs have the burden of proving that:

1. Property they owned, other than the Sapphire pea seeds and the plants which grew from them, was physically damaged by the Sapphire pea seeds.

Sources:

- *Nada Pacific Corp. v. Power Eng'g & Mfg.*, 73 F.Supp.3d 1206, 1221 – 1223 (N.D. Calif. 2014)
- *Agricola Baja Best v. Harris Moran Seed Co.,* 44 F.Supp.3d 974, 986 – 988 (S.D. Calif. 2014)
- *Livermore Amador Valley Wastewater Management Agency v. Northwest Pipe & Casting Co.*, 915 F.Supp. 1066, 1069 – 1074 (N.D. Calif. 1995)
- *City of San Diego v. Amoco Chem. Co.*, 1999 U.S. Dist. LEXIS 24184 *, 3 – 8 (S.D. Calif. 1999)

///

B. **Brief Description of Key Evidence in Opposition to Plaintiffs' Claims [L.R. 16 – 14.1(c)]**

As Crites understands it, plaintiffs intend to argue that the Sapphire pea seeds in question were contaminated with pathogens (fungi and bacteria) prior to their departure from Washington state, which spread to non-Sapphire plants that were growing in farm plots adjacent to those in which plaintiffs had planted the Sapphire pea seeds. In opposition to this claim, Crites will introduce the testimony of its expert witnesses (Steve Koike, Dale Rush, and David Kelley). Crites' experts will testify that the pathogens purportedly identified, post-harvest, on the Sapphire seeds/plants were:

- Endemic to Peru;
- Not associated with living, organic matter;
- Not deleterious to pea seeds themselves, but potentially problematic with sprouted plants when sub-standard farming practices are employed;
- Not pathogenic with respect to pea seed varieties; and/or
- Typically found in soil or water used to irrigate farmland, and not carried on the surface of pea seeds.

In addition, Crites' expert witnesses will testify that the post-harvest testing conducted at plaintiffs' direction (a) failed to conform to international testing standards, (b) utilized methodologies which were not designed to identify pea seed pathogens present *pre-planting*, and/or (c) failed to control for conditions extant during the transportation, storage, and planting of the pea seeds after they left Crites' control. Crites' economic expert, Ann McDermott will testify that, based on harvest records plaintiffs produced, no evidence exists suggesting harvests from fields adjacent to those planted with Sapphire pea seeds were impacted in any way by that fact.

///

DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Finally, Crites' experts will testify that germination rates have nothing to do with plaintiffs' claims regarding the alleged impact of seed-borne pathogens on plants grown in fields *not* planted with Sapphire seeds. Thus, any and all evidence introduced with respect to germination rates which failed to meet plaintiffs' expectations is irrelevant to plaintiffs' claims with respect to damage allegedly done to plaintiffs' property *other than the Sapphire pea seeds themselves*, and, by extension, irrelevant to the only categories of damage plaintiffs are entitled to pursue as against Crites: recovery for physical damage done to property owned by plaintiffs other than the pea seeds and the plants which sprouted from them.

### C. Summary of Crites' Affirmative Defenses and Elements [L.R. 16—4.1(d) and (e)]

**Affirmative Defense 1:** Comparative Fault

Summary: Plaintiffs' recovery under their negligence and strict products liability claims must be reduced in proportion to their comparative fault.

Elements: Crites has the burden of proving that:

1. Plaintiffs were negligent; and
2. Plaintiffs' negligence was a substantial factor in causing their harm.

Source:

- CACI 405

**Affirmative Defense 2:** Misuse or Abuse of the Product

Summary: Upon taking possession of the Sapphire pea seeds in Peru, plaintiffs treated the seeds inappropriately, and this inappropriate treatment is the sole cause of plaintiffs' claimed damage.

Elements: Crites has the burden of proving that:

1. The seeds were misused and/or modified after they left Crites' possession, and

///

///

-8-

DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

2. The misuse and/or modification of the seeds was so highly extraordinary that it was not reasonably foreseeable to Crites, and therefore should be considered as the sole cause of plaintiffs' harm.

<u>Source</u>:  CACI 1245

### D. Brief Description of Key Evidence In Support of Crites' Affirmative Defenses [L.R. 16-4.1 (f)]

Crites will introduce evidence that neither Cuyuma nor AVSA test-planted the Sapphire pea seeds once they took delivery of them in Peru.  Cuyuma, in particular, should have done so, given that it had never grown sugar snap peas prior to 2016.  Both Cuyuma and AVSA knew that they would be planting Sapphire variety pea seeds for the first time in 2016; both knew the soil and water conditions into which they would be introducing a new-to-them sugar snap pea variety.  Plaintiffs' failure to confirm that the Sapphire pea seeds would perform as they expected prior to investing their money with Corona was negligent, and should decrease their recovery, if any, from Crites.  In addition, Crites will introduce evidence that both plaintiffs failed to inspect, thoroughly, the condition of the soil and water used in their respective farming operations in 2016, and their failure to do so was more likely than not the cause of any damage they incurred as the result of the 2016 growing season.

Crites will also introduce evidence that Cuyuma and AVSA treated the Sapphire pea seeds with chemicals after taking receipt of the seeds in Peru.  These additional chemical treatments (whether for the purpose of killing pathogens on the seeds, or for the purpose of increasing crop yield) were not foreseeable to Crites, which had never sold seeds to either plaintiff prior to 2016.   This misuse of the Sapphire pea seeds was more likely than not the cause of plaintiffs' claimed damage as the result of the 2016 growing season.

/ / /

/ / /

### III. ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)]

No evidentiary issues are anticipated as of the date of filing of this Memorandum.

### IV. ISSUES OF LAW [L.R. 16-4.1(i)]

There are no outstanding issues of law at this time.

### V. BIFURCATION OF ISSUES [L.R. 16-4.3]

Crites does not request bifurcation of issues at this time.

### VI. JURY TRIAL [L.R. 16-4.4]

Crites timely filed a request for a jury trial.

### VII. ATTORNEYS' FEES [L.R. 16-4.5]

There are no grounds for an award of attorneys' fees in this matter.

### VIII. ABANDONMENT OF ISSUES [L.R. 16-4.6]

Crites withdraws the following Affirmative Defenses:

1. Second Affirmative Defense: Third Party Negligence
2. Third Affirmative Defense: Alteration of the Product
3. Fourth Affirmative Defense: Mitigation of Damages
4. Sixth Affirmative Defense: UCC §2515 – Destruction of Evidence
5. Seventh Affirmative Defense: Failure to Inspect
6. Eighth Affirmative Defense: Waiver of Nonconformance
7. Ninth Affirmative Defense: Limitation of Remedies
8. Tenth Affirmative Defense: Learned Intermediary

Dated: March 10, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ J. Todd Konold
Jason F. Meyer
J. Todd Konold
Lisa G. Taylor
Attorneys for Defendant,
CRITES SEED, INC.

## I. CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP, 101 W. Broadway, Suite 2000, San Diego, CA 92101, my electronic mail address is crogers@grsm.com. On March 10, 2020, I served the foregoing document(s) as follows:

**DEFENDANT CRITES SEED, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4**

☒ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to all CM/ECF Users who have appeared in this case. Service with this NEF constitutes service pursuant to FRCP 5(b)(E).

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on March 10, 2020, at San Diego, California.

Coral M. Rogers