1

**HORTON, OBERRECHT, KIRKPATRICK & MARTHA**
Cheryl A. Kirkpatrick, Esq. (SBN 149906)
Peter C.L. Chen, Esq. (SBN 246720)
3 Park Plaza, Suite 350
Irvine, CA 92614
PH:  (949) 251-5100
FX:  (949) 251-5104
Email: ckirkpatrick@hortonfirm.com / pchen@hortonfirm.com

Attorneys for Defendant Corona Seeds, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Agricola Cuyuma SA;<br>Corporacion Agricola Vinasol SAC;<br><br>                                Plaintiffs,<br>v.<br><br>Corona Seeds, Inc.;<br><br>                                Defendant. | **CASE NO. 2:17-cv-8220 DMG (SKx)**<br><br>**CORONA SEEDS, INC.'S MEMORANDUM OF CONTENTIONS OF FACTS AND LAW**<br><br>**District Judge: Hon. Dolly M. Gee**<br><br>**Date: March 31, 2020**<br><br>Complaint Served: December 21, 2017<br>Current Trial Date: April  28, 2020<br><br>Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Steve Kim |

## <u>MEMORANDUM OF CONTENTIONS OF FACTS AND LAW</u>

Defendant Corona Seeds, Inc. (hereinafter referred to as "CORONA") submits this memorandum pursuant to Local Rule 16-4.

///

///

///

///

1. **CLAIMS AND DEFENSES**

    **A.**       **Summary of Plaintiffs Agricola Cuyuma S.A. ("CUYUMA") and Corporacion Agricola Vinasol SAC's ("AVSA") Claims Against CORONA**

        **i.**      **Breach of Express Warranty**

CUYUMA and AVSA (collectively "PLAINTIFFS") allege they purchase Sapphire Seeds, Lot C242606, from CORONA.  PLAINTIFFS allege that the bags on the Sapphire Seeds included a label indicating a germination rate of 87% but that the seeds, after planting, did not germinate at an 87% rate.

        **ii.**      **Breach of Contract**

Similar to the above, PLAINTIFFS allege that the bags on the Sapphire Seeds included a label indicating a germination rate of 87% but that the seeds, after planting, did not germinate at an 87% rate.

        **iii.**      **Negligence**

PLAINTIFFS allege that CORONA was negligent because it shipped the Sapphire Seeds with less than 87% germination, and further that these seeds were contaminated with certain pathogens. PLAINTIFFS allege that CORONA's shipment of seeds with less than 87% germination is a violation of the California Seed Law and Federal Seed Act.

    **B.**       **Elements Required to Establish PLAINTIFFS' Claims**

        **i.**      **Breach of Express Warranty**

To establish a breach of express warranty, PLAINTIFFS must prove the following: 1) that CORONA provided PLAINTIFFS a written warranty that the seeds would germinate at 87%; 2) that the seeds at issue did not perform as warranted; 3) that PLAINTIFFS took reasonable steps to notify CORONA within a reasonable time that the product was not as represented; 4) that CORONA failed to provide any remedies per the warranty; 5) that PLAINTIFFS were harmed; and 6) that the failure of the seeds was a

substantial factor in causing PLAINTIFFS' harm. *Judicial Council of California Civil Jury Instruction ("CACI")* § 1230.

### ii.   Breach of Contract

To establish breach of contract, PLAINTIFFS must prove the following: 1) the parties entered into a contract; 2) that PLAINTIFFS did all, or substantially all, of the significant things that the contract required them to do; or 3) that PLAINTIFFS were excused from performing those significant things;  4) that CORONA did something the contract prohibited it from doing; 5) that PLAINTIFFS were harmed; and 6) that CORONA's breach was a substantial factor in causing PLAINTIFFS harm. *CACI* § 303.

### iii.   Negligence

PLAINTIFFS are required to establish the following: 1) CORONA owed them a duty of care; 2) CORONA breached this duty of care; 3) that the breach proximately caused PLAINTIFFS' harm; 4) CORONA's conduct was a substantial factor in causing PLAINTIFFS' harm. *CACI* § 400, 401; *Rowland v. Christian* (1968) 69 Cal.2d 108, 112.

## 2.   KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS

The following facts / evidence apply to all of PLAINTIFFS' claims:

### A.   Sapphire Pea Seeds

The subject seeds CORONA sold to PLAINTIFFS were supplied by Crites Seeds, Inc. ("CRITES"), a seed supplier / manufacturer. CRITES placed the subject seeds in bags provided by CORONA, sealed the bags, and sent them to CORONA. The subject seeds were tested by Eurofins, a third-party testing agency, prior to shipment.  The results indicated that a test of the sample pulled from Lot C242606, as of November 2015, had a germination rate of 87%.  CRITES affixed a label to the bags, indicating that, as of November 2015, the germination rate was 87% as to the tested samples.  (UMF No. 3). The seeds were then treated with a fungicide called Thiram, and then bagged, sealed, and shipped to CORONA.

After the subject seeds were shipped to CORONA, CRITES performed germination testing on retained samples treated with Thiram.  Testing revealed that germination dropped. This was unexpected, as Thiram treatment typically results in an increase in germination rates. CRITES, however, did not communicate the lowered germination figures to CORONA until *after* AVSA communicated concerns with the seed's germination in late May 2016.

### B.      AVSA

AVSA is a commercial grower and exporter of agricultural produce in Peru and has been in business since 2001.  AVSA placed an order for certain seeds, including Sapphire seeds from Lot C242606, from CORONA in January 2016 for $26,400. No one from AVSA or CORONA discussed germination rates for the subject seeds at any point during the purchase / sale process. The labels that Crites affixed to the bags indicate that testing of the seeds in November 2015 showed a germination of 87%.

The invoice for the sale of the subject seeds contained the following language:

> "NOTICE TO BUYER-PLEASE READ BEFORE PLANTING
> GUARANTEE AND EXPLANATION OF GUARANTEES;
> LIMITATION OF DAMAGES
> Corona Seeds, Inc. warrants that seeds are labeled as required by law and within the tolerances set forth on the label. CORONA SEEDS AND ITS SUPPLIERS MAKE NO OTHER EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. The recommendations for the use of these products are based on the best recommendation and judgment of the personnel of Corona Seeds and its suppliers, without having any guarantee of results obtained in relation to these varieties. The **Buyer guarantees that he / she is a farmer of a nursery with experience in the use of seeds. The new varieties must be tested to see their adaptability before commercial use**. The descriptions and pictures of advertising will be used only as a guide and do not constitute any guarantee.
> LIMITATION OF LIABILITY: The **exclusive remedy for losses or damages for breach of the previous warranty or for negligence or**

> ***otherwise, is limited to the purchase price of the seed and will not
> include the consequential damages***. Claims for defects in this product
> must be submitted to Corona Seeds as soon as possible to allow Corona
> Seeds to investigate the complaint and, within 30 days after discovery.  If
> the seed is transferred to a third party, a warning similar to this will be
> obtained, and Corona Seeds will be free of damages and will be
> compensated for damages caused by this transfer.
> DISEASES: Some plant diseases are transmitted by seeds. ***Unless
> otherwise indicated in writing, no seeds have been tested for diseases
> transmitted by seeds. The test can be done at the request of the buyer at
> an additional cost***.”  (Emphasis added).

The bags themselves contain the same language indicated above. In addition, a

label affixed to the bag states the following:

> “WARRANTY AND DISCLAIMER OF WARRANTIES: Seller
> warrants that this product has been labeled as required by law and that it
> conforms to the label description, SELLER MAKES NO OTHER
> EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY,
> FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. Any
> recommendations for the use of this product or materials or apparatus in
> connection therewith are based upon Seller’s best judgment but there is
> no warranty of results to be obtained in connection therewith.
> LIMITATION OF LIABILITY: The ***exclusive remedy for loss or
> damage due to breach of the foregoing warranty or contract or for
> negligence or other cause shall be limited to return of purchase price of
> this product and shall not include consequential damage***s. Claims for
> defects in this product must be presented to Seller as soon as practicable
> to enable Seller to investigate and in any event within thirty days after
> discovery.” (Emphasis added).

Once the seeds arrived in Peru, they were quarantined with SENASA, a

government agency.  The seeds were released by SENASA to AVSA after they cleared

quarantine.

AVSA did not perform a germination test prior to planting the seeds.  AVSA did

not test the seeds for disease prior to planting.  AVSA did not test-plant the seeds.

Instead, AVSA applied agro-chemicals to the seeds prior to planting, and applied

additional agro-chemicals during cultivation. Sometime after planting, AVSA contends issues with the seeds arose.

On May 25, 2016, AVSA advised CORONA of problems with the plantings. CORONA sent samples of C242606 to an independent laboratory for testing, and also advised CRITES of the issue.   CORONA recommended that AVSA plant the Sapphire seeds at a 3-to-1 ratio after discussing the problem with CRITES.

At this point in time, CORONA was not placed on notice of any potential issues or claims regarding pathogens or similar issues. CORONA was able to secure replacement Sapphire seeds of a different lot from CRITES and these replacement Sapphire seeds were sent to AVSA on May 26, 2016, arriving in Peru on June 10, 2016.  In sending the replacement seeds, CORONA entered into an agreement with AVSA, wherein if testing of the subject seeds exceeded 85%, then AVSA would agree to pay for the replacement seeds.  CORONA did not charge AVSA for the replacement seeds.

### C.     CUYUMA

CUYUMA is a commercial grower and exporter of agricultural produce in Peru. CUYUMA placed an order with CORONA in March 2016 for certain seeds, including Sapphire seeds, from lot C242606.   The purchase price of the seeds was $20,515.  The seeds were shipped by ocean freight on March 25, 2016.  No one from CUYUMA or CORONA discussed germination rates for the subject seeds at any point during the purchase / sale process. The labels that Crites affixed to the bags indicate that testing of the seeds in November 2015 showed a germination of 87%.  The invoice contained the following language:

> "NOTICE OF DISCLAIMER OF WARRANTY, LIMITATION OF DAMAGES & INDEMNITY: Seller and its vendors disclaim any warranty whether express or implied of MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OF WARRANTY BY SAMPLE. ***Damages shall be exclusively LIMITED TO THE PURCHASE PRICE of the seed***. If seed is transferred to another party Buyer shall indemnify, defend and hold Seller harmless from any claims. DISEASES: Many diseases are

seedborne. ***Unless specifically stated, no seed has been tested for disease. Testing is available for additional charge***." (Emphasis added).

Importantly, the bags and label additionally contain the same language discussed in the AVSA section above.

CUYUMA does not dispute the terms of the provision above. CORONA voluntarily advised CUYUMA of concerns after receipt of information from AVSA regarding issues with the planting.  CORONA again recommended planting at a 3-to-1 ratio.  In addition, CORONA sent replacement seeds to CUYUMA free of charge.

### D.        Pathogen Allegations

Here, PLAINTIFFS rely on several tests (putting aside any issues with admissibility or foundation at this juncture) that purportedly identified pathogens. SENASA detected a fungus called  Stemphylium Sarciniforme on November 8, 2016, on the plant – not on seeds. This was the very first "notice" of any potential pathogens. However, this was well after the initial planting or 3-to-1 recommendation.

Plaintiffs also rely on testing performed by an entity called SGS-Portugal, which identified four types of fungi (Pantoea sp., Enterobacteriacese, Erwinia sp., and Acinetobacter sp.) and bacteria (Stemphylium sp., Alternaria sp., Cladosporium sp., Fusarium oxysporum, Sclerotinia sp., Cryptococcus victoriae, Thanalephorus cucumeris, and Pythium sp.).  PLAINTIFFS additionally rely on two tests performed by a Dr. Luz Leonor Mattos Calderon on samples of the subject Sapphire Seeds (at the behest of AVSA & CUYUMA), which purportedly revealed the presence of a bacteria called Pseudomonas syringae pv. psi.

With respect to the Stemphylium Sarciniforme, this is a "mold" type of fungus that commonly grows on dead organic matter and can be spread via spores in the air. While this fungus can be a contaminant on the outside surfaces of large sized seeds, such as pea seeds, it *does not* infect the pea and does not cause any problems to pea seeds. This fungus can grow as a secondary colonizer on plant tissues damaged by factors such as

weather extremes, insect feeding, senescence and decline of the plant, high salts and other field problems, and damage caused by production practices. Stemphylium sarciniforme is common around the world, including in Peru.

SGS-Portugal performed testing on a sampling of seeds taken from the subject lot in April 2017.  The testing methodology used was "next generation sequencing," or "NGS." The NGS test consists of a high-level DNA analysis of the object tested. However, NGS testing does not provide any information on whether the DNA is alive or dead. The presence of a particular fungus or bacterium, which was killed or otherwise died prior to planting, can and will show up in an NGS test.  In short, there is no way to discern between "dead" DNA versus "live" DNA.  Since NGS is only detecting DNA, the test does not indicate if the actual fungus or bacterium was even present.

The pathogens identified by SGS-Portugal are common and found everywhere, including soil, hands, dust, etc. As for three of the fungi identified, Stemphylium sp., Alternaria sp., and Cladosporium sp., these are common mold and not pathogenic to peas. Cryptococcus victoriae is a yeast that is not pathogenic to peas.  As for Fusarium oxysporum, only one (1) strain out of hundreds is pathogenic to peas, and in this case, the test provides no information on the specific strain and it is soil-borne. Similarly, Sclerotina sp. is a soil-borne fungi and only limited species outs of hundred are pathogenic.  The testing did not identify the specific species. Thanatephorus cucumeris and Pythium can be pathogenic to peas but both are ***soil-borne***. Notably, soil-borne fungi are pathogenic only if the contact is through soil.  The presence of soil-borne fungi on seeds generally suggests that the fungi is dead or inactive.

As for the phytopathological testing performed by Dr. Calderon, it should be noted at the outset that no fungi that is pathogenic to peas was detected.  This is noteworthy because this testing did not detect any of the fungi that the SGS-Portugal test identified, which supports the notion that any such fungi was dead or otherwise inactive. With

respect to the bacteria found, the testing methodology used does not conform to international standards and results in false positives.

### E. Breach of Express Warranty

PLAINTIFFS cannot demonstrate a breach of warranty by Corona for a number of reasons. First, Plaintiffs cannot demonstrate that CORONA provided PLAINTIFFS a written warranty that the seeds would germinate at 87%. Second, CORONA expressly limited any warranties by the clear terms of its invoicing and packaging. Third, language contained in the invoices, bags, and labels, clearly advised PLAINTIFFS that new varieties, which PLAINTIFFS admit they had not grown before, must be tested for adaptability prior to commercial use.

#### 1.   *CORONA Did Not Warrant the Seeds Would Germinate at 87%*

CRITES affixed a label to bags of seeds CORONA sold to PLAINTIFFS. The labels indicate the month and year in which germination testing was performed, November 2015. Immediately adjacent to the date of the test, a germination rate of 87% appears. It is clear from the proximity of the date of the test to the percentage germination rate identified, that the germination rate relates to testing performed in November of 2015.

Here, the evidence will show that tests of the lots from which the seeds sold to PLAINTIFFS came were performed by a third-party testing agency prior to shipment. Those tests demonstrate that samples from the lot tested in November 2015 had a germination rate of 87%, as labeled. Accordingly, the information contained on the label regarding germination is demonstrably true and correct. There is no additional language suggesting that this germination rate will not change over time. Accordingly, there is no breach of any warranties contained in the information provided to PLAINTIFFS.

Here, the evidence will show that the first discussion between anyone at AVSA and CORONA regarding germination occurred well after the sales transaction between CORONA and PLAINTIFFS was complete. Thus, no express warranties were made to

PLAINTIFFS.  Moreover, CORONA will show that it is understood in the industry that the 87% testing result is based on samples, and is not a warranty that the seeds will actually germinate at an 87% level in the real world. It is further understood in the industry that germination testing can only be performed on a sample because it is impossible to conduct germination testing on all of the seeds, as there would be no seeds left to sell.  In addition, AVSA modified the seeds by application of agro-chemicals pre-planting and during cultivation, substantially altering the seeds at issue.

        2.   *CORONA Expressly Limited the Remedies Available to PLAINTIFFS*

*California Commercial Code ("CCC")* § 2316 permits parties to exclude or modify warranties.  Here, CORONA expressly limited the remedies available to PLAINTIFFS.  For example, the label on the bag sold to AFSA indicates that:

> LIMITATION OF LIABILITY: The ***exclusive remedy for loss or damage due to breach of the foregoing warranty or contract or for negligence or other cause shall be limited to return of purchase price of this product and shall not include consequential damage***s.

Similarly, the language on the invoice to CUYAMA states:

> NOTICE OF DISCLAIMER OF WARRANTY, LIMITATION OF DAMAGES & INDEMNITY: Seller and its vendors disclaim any warranty whether express or implied of MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OF WARRANTY BY SAMPLE. ***Damages shall be exclusively LIMITED TO THE PURCHASE PRICE of the seed***. If seed is transferred to another party Buyer shall indemnify, defend and hold Seller harmless from any claims. DISEASES: Many diseases are seedborne. ***Unless specifically stated, no seed has been tested for disease. Testing is available for additional charge***." (Emphasis added).

As set forth above, CORONA disclaimed any warranties, express or implied, in connection with the sale of the seeds at issue.  Because the disclaimer language and limitation clause was included in the purchase agreements, bags and labels, PLAINTIFFS

cannot claim they were not adequately notified of the terms of the disclaimer. *Agricola Baja Best v. Harris Moran Seed Company* (S.D. Cal. 2014) 44 F.Supp.3d 974, 991.

California law permits the parties to a contract to modify or otherwise limit warranties, including remedies, in connection with the sale of goods. *CCC* § 2719; *Nat'l Rural Tele. Coop. v. DIRECTV, Inc.* (C.D. Cal 2003) 319 F.Supp.2d 1040, 1048. Limitation of remedies to purchase price has been considered appropriate in California. *CCC* § 2719(1); *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1533. Importantly, courts typically should not alter the bargained for risk unless the breach is so fundamental that it causes a loss which is not part of that allocation. *Milgard Tempering, Inc. v. Selas Corp. of Am.* (9th Cir. 1990) 902 F.2d 703, 709.

Here, there was no "fundamental breach" of an agreement that was not part of the risk allocation.  It is understood in the industry that germination is based on a sampling because it is impossible to test all seeds, as there would be no seeds left to sell.  In addition, the success of planting is highly dependent on factors entirely outside a seller's control. Importantly, the germination rate of the seeds cannot be considered a latent defect under these circumstances.  First, PLAINTIFFS were specifically advised that new varieties must be tested for adaptability prior to commercial use.  PLAINTIFFS failed to test the seeds. Second, PLAINTIFFS were specifically advised that the seeds have not been tested for disease.  PLAINTIFFS did not perform any testing or request any testing to be done prior to planting.  Third, despite acknowledging that AVSA typically conducts testing prior to planting, it inexplicably failed to do so here. Fourth, by sending replacements seeds free of charge once available, PLAINTIFFS were able to remain, as much as possible, on their planting schedule. Fifth, the seeds that were sent were not in the same condition as those PLAINTIFFS planted in that PLAINTIFFS altered them. Ultimately, CORONA provided a remedy to PLAINTIFFS when it sent replacement seeds free of charge.

Ultimately, PLAINTIFFS seek to entirely ignore the many factors that impact whether germination and planting are successful. Most of these factors are outside of CORONA's control, including 1) seed storage and handling; 2) length of storage; 3) transportation; 4) ground preparation; 5) planting methods; 6) irrigation and soil moisture; 7) weather and environment; 8) application of chemicals; 9) non-emergence factors due to damage by soil-borne insects or infection by soil-borne pathogens; and 10) seed predation. Notably, PLAINTIFFS applied agro-chemicals pre-planting and during cultivation, substantially altering the seeds at issue.

### 3. *PLAINTIFFS Failed To Test The Seeds*

In addition to limiting the remedies available to PLAINTIFFS, language contained in the invoices, bags, and labels, clearly advised PLAINTIFFS that new varieties, which PLAINTIFFS admit they had not grown before, must be tested for adaptability prior to commercial use. Nevertheless, neither PLAINTIFF tested them prior to planting. Similarly, AVSA's representative testified that while AVSA typically conducts germination testing prior to planting, they chose not to do so in this instance. Furthermore, the language in the invoice, bags, and labels clearly advised PLAINTIFFS that the seeds had not been tested for disease. Again, despite being put on notice of such, PLAINTIFFS did not request or otherwise perform any testing prior to planting.

In light of the foregoing, PLAINTIFFS cannot prove each and every element necessary to prove breach of express warranty because the 87% label is not a guarantee of a given germination rate once the seeds are planted. Instead, the only representation made is that a sampling of seeds germinated at that rate in a laboratory in November of 2015. In response to complaints regarding the seeds, CORONA provided the specific remedy provided for in the invoice, bags, and labels. Finally, evidence regarding causation is suspect at best, as the scientific evidence PLAINTIFFS appear to rely upon is questionable. (Please see negligence section below).

///

### F.     Breach of Contract

Because PLAINTIFFS' breach of contract claim is based on the same language discussed above, the arguments that apply to breach of express warranty also apply to the breach of contract claim.  In reviewing the elements of a breach of contract claim, there should be no dispute that the parties entered into contracts regarding the sales of the seeds. These contracts also contain language outlining the rights of the respective parties. PLAINTIFFS seek to prove that they performed all, or substantially all, of the significant things the contract required them or do or that such things were excused / waived. Specifically, the invoices, bags, and labels indicate that PLAINTIFFS "guarantees that he / she is a farmer of a nursery with experience in the use of seeds. The new varieties must be tested to see their adaptability before commercial use."  PLAINTIFFS, however, failed to do so.

Similarly, PLAINTIFFS were put on notice that the seeds had not been tested for disease.  Despite being placed on notice of such, PLAINTIFFS failed to perform any testing for disease, and failed to provide any excuse for their failure to do so.  Furthermore, there is no evidence that CORONA did anything the contract required it to do.  Finally, whether PLAINTIFFS suffered harm is questionable because the evidence upon which PLAINTIFFS rely does not appear to support their claims.

### G.     Negligence

PLAINTIFF misstates the duty of care CORONA purportedly owes in this case. CORONA does not owe a duty to ensure that the subject seeds actually germinate at 87% and that they will grow into successful, marketable crops.  PLAINTIFFS' position effectively places CORONA into the position of an insurer.  The evidence in this case will show that whether a seed germinates or a planting is successful depends on a multitude of factors, most of which are outside of CORONA's control, including 1) seed storage and handling; 2) length of storage; 3) transportation; 4) ground preparation; 5) planting method; 6) irrigation and soil moisture; 7) weather and environment; 8)

application of chemicals; 9) non-emergence factors due to damage by soil-borne insects or infection by soil-borne pathogens; and 10) seed predation.  Notably, PLAINTIFFS applied agro-chemicals pre-planting and during cultivation, substantially altering the seeds at issue.

In support of the claim that CORONA owed a duty to provide seeds with a certain germination percentage, PLAINTIFFS rely on the Federal Seed Act ("FSA") and California Seed Law ("CSL").  PLAINTIFFS reliance is misplaced. Focusing on the FSA, PLAINTIFFS appear to rely on § 1571.  This section falls under the section of the FSA that governs *interstate commerce*. Section 1561(a)(3) states the following:

> "(3) The term "interstate commerce" means--
> (A) commerce between any State, Territory, possession, or the District of Columbia, and any other State, Territory, possession, or the District of Columbia; or
> (B) commerce between points within the same State, Territory, or possession, or the District of Columbia, but through any place outside thereof; or
> (C) commerce within the District of Columbia."

The subject transactions involves citizens of Peru and California.  By definition, that does not fall within the purview of interstate commerce as contemplated by the FSA.

With respect to the CSL, it "must be construed to conform as much as possible with the construction placed upon the Federal Seed Act."  *Nunes Turfgrass v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1533.  As indicated above, the portion of the FSA regarding seed labeling applies only to interstate commerce. Thus, PLAINTIFFS cannot rely on any purported violations of the CSL as a basis for their negligence cause of action.

Neither sections of the FSA or CSL that PLAINTIFFS rely upon apply to exports. Notably, those sections apply only to interstate commerce.  The sections of those statutes that discuss exports are silent on germination testing and/or standards.  Because the

Legislature placed germination requirements in the interstate commerce section, that necessarily means the Legislature could have, but chose not to, impose such requirements for exports.

This leads to PLAINTIFFS next argument that the seeds were infected with certain pathogens. However, the test results PLAINTIFFS rely upon do not support their contentions. First, several of the pathogens are common throughout the world, including Peru. Second, PLAINTIFFS placed significant emphasis on the presence of Pythium. However, the test detected DNA evidence of Pythium, regardless of whether the Pythium is live, dead, or simply the presence of a few DNA fragments of Pythium. Again, all experts agree Pythium is _soil-borne_ and _not_ seed-borne. Furthermore, if "live" Pythium was in fact detected on the subject seeds, it is noteworthy that Dr. Calderon's testing on behalf of PLAINTIFFS did not reveal the presence of Pythium. Notably, PLAINTIFFS representatives testified that they did not test the soil in the fields prior to testing, and further testified that peas were planted in the same fields the year prior. In short, PLAINTIFFS failed to test the soil for pathogens prior to planting and further failed to rotate crops.

There is no demonstrable evidence demonstrating the closeness of CORONA's conduct to the harm suffered. In addition, there is no moral blame to CORONA's conduct as CORONA had no reason to doubt the germination test and was not apprised of the post-treatment developments until much later. The policy of preventing future harm should not fall on CORONA's shoulders as it did not manufacture or test the seed. Along those lines, CORONA advised PLAINTIFFS that the seeds needed to be tested for adaptability prior to sale and that they had not been tested for disease. It would also create a significant burden to CORONA if it was forced to guarantee that seeds actually germinate at the rate tested because it would render CORONA an insurer of success, which is entirely out of CORONA's control.

One final issue here is the matter of the economic loss rule.  A purchaser "must recover in contract for purely economic loss due to disappointed expectations." *Robinson Helicopter Co. v. Dana Corp.* (2004) 34 Cal.4th 979, 988.  Recovery in tort is barred unless the purchaser can demonstrate harm above and beyond a broken contractual promise. *Id.* Plaintiffs' claims are based on the sale of the subject seeds – which is a contractual issue.  Unless PLAINTIFFS can prove that other property was harmed, Plaintiffs cannot maintain their negligence claim.

### 3. <u>SUMMARY OF CORONA'S AFFIRMATIVE DEFENSES</u>

Affirmative defense one: PLAINTIFFS' operative complaint fails to allege facts sufficient to state the causes of action alleged or damages sought against DEFENDANT.

Affirmative defense three: PLAINTIFFS' exclusive remedies are governed by the agreements entered into with DEFENDANT.

Affirmative defense four: PLAINTIFFS' harm, if any, was the direct and proximate result of the negligence, careless, reckless and unlawful conduct of parties, persons, corporations and/or entities, including PLAINTIFFS, other than these answering DEFENDANT, and that said acts were an intervening and/or superseding cause of the damages, if any, bars either completely or partially the damages sought herein, and further that the liability of this answering DEFENDANT, if any, is limited in direct proportion to the percentage of fault actually attributable to this answering DEFENDANT.

Affirmative defense six: PLAINTIFFS have waived any and all rights to recover damages from DEFENDANT, including but not limited to disclaimer of warranties, limitation of liability, etc.

Affirmative defense seven: PLAINTIFFS expressly, voluntarily and knowingly assumed all risks about which they complain and that, therefore, it is barred either totally or to the extent of said assumption from any damages.

Affirmative defense nine: DEFENDANT'S practices, policies and procedures

comply with all applicable laws.

Affirmative defense ten: PLAINTIFFS failed to perform all duties and obligations on their part of any agreement, oral or written, with this answering DEFENDANT, and such acts or omissions bar PLAINTIFFS' recovery herein.  If DEFENDANT is found to have failed to perform any covenant or condition pursuant to any alleged agreement with PLAINTIFFS, this answering DEFENDANT alleges that such failure was for the reason that PLAINTIFFS, by their acts or omissions, or those of their agents, prevented these answering DEFENDANT'S performance and excused any and all future performance.

Affirmative defense eleven: The rights and remedies at issue here are governed by the terms and conditions of the contracts and amendments entered into between PLAINTIFFS and DEFENDANT. DEFENDANT rely upon each and every defense and limitation contained therein and in the documents.

Affirmative defense twelve: PLAINTIFFS failed to satisfy one or more express or implied conditions precedent to any obligations allegedly owed to PLAINTIFFS, specifically that the agreements at issue contained agreements by PLAINTIFFS to conduct testing.

Affirmative defense fifteen: DEFENDANT is entitled to a setoff against any damages owed to PLAINTIFFS by virtue of the conduct of PLAINTIFFS and others responsible for PLAINTIFFS' alleged damages, if any.

Affirmative defense sixteen: DEFENDANT allege if it is found that DEFENDANT made a warranty, express or implied, which this DEFENDANT denies, then such warranty, if any, was disclaimed, excluded and limited in all of its parts and its entirety, explicitly and conspicuously both orally and in writing, in words that plainly convey the meaning to PLAINTIFFS that such disclaimer and limitation of such warranty, if any, was also excluded and modified in the course of dealing and usage of the trade, all as to preclude PLAINTIFFS from reliance upon a recovery from this warranty.

Affirmative defense seventeen: PLAINTIFFS failed to give adequate notice of the alleged breach of warranty, that there was delay of giving notice of a breach within a reasonable time of discovering the breach of warranty or when PLAINTIFFS should have discovered the breach of warranty.

Affirmative defense eighteen: DEFENDANT appropriately, completely, and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

Affirmative defense twenty: The conduct of DEFENDANT was justified or otherwise subject to the doctrine of excuse, and by reason of the foregoing, PLAINTIFFS are barred from any recovery.

Affirmative defense twenty-one: PLAINTIFFS' Complaint is barred due to the existence of releases and other matters of contract, by which the PLAINTIFFS are bound, which preclude PLAINTIFFS' recovery of damages.

Affirmative defense twenty-two: Granting PLAINTIFFS' demand in the Complaint would result in PLAINTIFFS receiving more money than entitled.

Affirmative defense twenty-three: PLAINTIFFS' claims are based on a verbal statement that contradicts or falls outside the written terms of the agreements.

Affirmative defense twenty-four: The enforcement of PLAINTIFFS' claims would go against the purpose of the agreements, including but not limited to disclaimer of warranties, limitation of liability, etc., specifically that the agreements at issue contained disclaimer of warranties and limitation of liability clauses that limit, if not entirely dispose of, Plaintiffs' remedies in connection with their claims. These warranties and limitation of liability clauses are contained within the documents that Plaintiffs attached to their pleadings.

Affirmative defense twenty-five: PLAINTIFFS' claims are based, in whole or in part, on verbal statements that contradicts or falls outside the written terms of the agreements in violation of the parol evidence rule; any oral statement or representations

made to PLAINTIFFS that contradict express written contractual terms are barred.

Affirmative defense twenty-six: PLAINTIFFS' claims are barred because PLAINTIFFS, and not DEFENDANT, breached the agreements at issue.

Affirmative defense twenty-seven: PLAINTIFFS seek to recover damages that are highly speculative in nature are thus not recoverable against DEFENDANT.

Affirmative defense twenty-nine: PLAINTIFFS failed to take reasonable and prudent actions to mitigate its alleged damages.

Affirmative defense thirty: PLAINTIFFS' claims are barred by the doctrine of Accord & Satisfaction.

## 4. ELEMENTS OF CORONA'S AFFIRMATIVE DEFENSES

**A.  First Affirmative Defense - PLAINTIFFS' operative complaint fails to allege facts sufficient to state the causes of action alleged or damages sought against DEFENDANT**

PLAINTIFFS failed to demonstrate essential elements of each and every cause of action.

On the Express Warranty Cause of Action, PLAINTIFFS cannot demonstrate that there was any express warranty regarding the germination rates PLAINTIFFS should expect.  PLAINTIFFS cannot prove that the seeds did not perform as promised as there were no promises as to ultimate performance by CORONA.  Similarly, PLAINTIFFS cannot a breach of any express warranty, that CORONA failed to remedy the issue as required in the warranty, or that any breach of warranty caused PLAINTIFFS' damages. *CACI* § 1230 et seq.

On the Breach of Contract cause of action, PLAINTIFFS cannot demonstrate that they did all or substantially all of the things they were required to do, or that they were excused from so doing.  They cannot demonstrate that CORONA failed to do something the contract required it to do.  They cannot demonstrate that any breach of contract by CORONA, caused their damages.  *CACI* §303 et seq.

On the negligence cause of action, PLAINTIFFS cannot present evidence demonstrating a breach of any standard of care owed to them.  They cannot demonstrate that their damages were caused by any failure of CORONA to adhere to the standard of care.  *CACI* § 400 et seq.

**B.      Third Affirmative Defense – PLAINTIFFS' Exclusive Remedies Are Governed By the Agreements Entered Into With CORONA**

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement.

*See CCC* § 2316; 2719; *Agricola Baja Best v. Harris Moran Seed Company* (S.D. Cal. 2014) 44 F.Supp.3d 974, 991; *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1533. *Milgard Tempering, Inc. v. Selas Corp. of Am.* (9th Cir. 1990) 902 F.2d 703, 709.

**C.      Fourth Affirmative Defense – Conduct of PLAINTIFFS And Others**

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the crop, including cultivation, harvest, and the sale of the resulting crop;

CRITES failed to advise CORONA and/or PLAINTIFFS of the post-Thiram treatment germination test results.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603; International Sale of Goods § 38.

### D.       Sixth Affirmative Defense – Waiver

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct

germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting.

*CCC* § 2316, 2719, 2602, 2603; International Sale of Goods § 38.

### E.      Seventh Affirmative Defense – Assumption Of The Risk

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the

crop, including cultivation, harvest, and the sale of the resulting crop.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603, 2316, 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

### F.   Ninth Affirmative Defense – Compliance With Laws

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the

crop, including cultivation, harvest, and the sale of the resulting crop.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603, 2316, 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

### G.     Tenth Affirmative Defense – PLAINTIFFS' Failure To Perform All Duties And Obligations

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do in the invoices, bags and labels;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do in the invoices, bags and labels, prior to planting;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold.

*See CCC* § 2602, 2603, 2316; 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

### H.     Eleventh Affirmative Defense – Rights Governed By Contracts

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement.

*See CCC* § 2316; 2719; *Agricola Baja Best v. Harris Moran Seed Company* (S.D. Cal. 2014) 44 F.Supp.3d 974, 991; *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1533. *Milgard Tempering, Inc. v. Selas Corp. of Am.* (9th Cir. 1990) 902 F.2d 703, 709.

## I.        Twelfth Affirmative Defense – Conditions to Contracts

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do in the invoices, bags and labels;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do in the invoices, bags and labels, prior to planting;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold. *See CCC* § 2602, 2603, 2316; 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

### J.        Fifteenth Affirmative Defense – Setoff

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

The terms and conditions indicate that PLAINTIFFS' recovery is limited to the purchase price of the seeds;

CORONA sent replacements seeds to PLAINTIFFS at no charge;

CORONA is entitled to a setoff on the price of the seeds that were sent free of charge as PLAINTIFF now seeks recovery above and beyond the replacement seeds.

*See CCC* § 2602, 2603, 2316; 2719; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709; *Hughes Tool Co. v. Max Hinrichs Seed Co.* (1980) 112 Cal.App.3d 194, 199-200; *Howard v. American Nat. Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 516.

///

///

///

///

**K.      Sixteenth Affirmative Defense – Limitation of Warranties / Remedies**

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do in the invoices, bags and labels;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do in the invoices, bags and labels, prior to planting;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold.

*See CCC* § 2602, 2603, 2316; 2719; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

**L.      Eighteenth Affirmative Defense – Compliance with Law**

CORONA hereby incorporates the ninth and eighteenth affirmative defense into a single affirmative defense.

**M.      Twentieth Affirmative Defense – Excuse**

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

PLAINTIFFS made no communications regarding germination as part of the sale

of the seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do in the invoices, bags and labels;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do in the invoices, bags and labels, prior to planting;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold.

*See CCC* § 2602, 2603, 2316; 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

### N.         Twenty-First Affirmative Defense – Limited Remedies

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the crop, including cultivation, harvest, and the sale of the resulting crop.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603, 2316, 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

### O.        Twenty-Second Affirmative Defense – Excess Recovery

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the crop, including cultivation, harvest, and the sale of the resulting crop.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603, 2316, 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

**P.      Twenty-Fourth Affirmative Defense – PLAINTIFF's Claims Contravene Contractual Agreements**

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the crop, including cultivation, harvest, and the sale of the resulting crop.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603, 2316, 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

## Q.      Twenty-Seventh Affirmative Defense – Speculative Damages

PLAINTIFFS damages are limited pursuant to the agreements entered into with CORONA;

PLAINTIFFS have not carried their burden of proof in demonstrating they are entitled to the damages alleged.

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement;

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the crop, including cultivation, harvest, and the sale of the resulting crop.

*CACI* § 405, 406, 411, 430, 432; *CCC* § 2602, 2603, 2316, 2719; International Sale of Goods § 38; *Agricola,* 44 F.Supp.3d 991; *Nunes,* 200 Cal.App.3d at 1533; *Milgard,* 902 F.2d at 709.

*See CACI* § 200, 3900, 3903, 3903F, 3903H.

///

///

**R.        Twenty-Ninth Affirmative Defense – Failure to Mitigate**

CORONA and PLAINTIFFS entered into valid agreements in connection with the sale of the subject seeds;

The terms, conditions, and language contained on the invoices, bags, and labels clearly set forth the rights and obligations owed by CORONA and PLAINTIFFS to each other;

PLAINTIFFS did not dispute any of the terms and/or conditions identified in the invoices, bags and labels;

The terms and conditions set forth in the invoices, bags and labels are enforceable against the PARTIES to the agreement.

PLAINTIFFS made no communications regarding germination as part of the sale of the seeds;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for adaptability prior to commercial use, as they were advised to do;

PLAINTIFFS, despite having ample time and opportunity, failed to conduct germination testing on the seeds prior to planting;

PLAINTIFFS, despite having ample time and opportunity, failed to test the seeds for disease, as they were advised to do, prior to planting;

PLAINTIFFS did not test the fields in question prior to planting;

PLAINTIFFS did not rotate crops at the fields in question;

PLAINTIFFS applied several agro-chemicals to the seeds prior to planting, and during cultivation, greatly modifying / altering the seeds that CORONA sold;

PLAINTIFFS are solely responsible for post-germination issues involving the crop, including cultivation, harvest, and the sale of the resulting crop;

CRITES failed to advise CORONA and/or PLAINTIFFS of the post-Thiram treatment germination test results.

*See CCC* 303 *et seq.,* 400, 405, 406, 411, 430, 32, 1230 *et seq.; CCC* § 2316; 2719;

*Agricola Baja Best v. Harris Moran Seed Company* (S.D. Cal. 2014) 44 F.Supp.3d 974, 991; *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1533. *Milgard Tempering, Inc. v. Selas Corp. of Am.* (9th Cir. 1990) 902 F.2d 703, 709.

### S.       Thirtieth Affirmative Defense – Accord & Satisfaction

AVSA advised CORONA of germination issues with the seed in late May 2016;

AVSA and CORONA entered into a new agreement wherein CORONA would provide replacement seeds free or charge if germination testing of the previously sent seeds were below a certain percentage;

In exchange, AVSA agreed to waive any future claims against CORONA.

CORONA sent seeds, free of charge, to AVSA.

*California Civil Code* § 1521, 1522.

## 5.  CORONA'S KEY EVIDENCE IN SUPPORT OF ITS AFFIRMATIVE DEFENSES

CORONA herein relies on all evidence and facts set forth in Section 2(A) – (G) above in support of its affirmative defenses. CORONA will rely on testimony provided by representatives of the parties, retained and non-retained experts in support of its defenses. With respect to damages, CORONA will rely on the testimony and reports generated by its retained consultants.

## 6.  BIFURCATION OF ISSUES

Not requested at this time.

## 7.  JURY TRIAL

CORONA seeks jury trial on all issues raised.  CORONA timely requested jury trial when it appeared in this action.

## 8.  ATTORNEYS' FEES

None of the claims asserted include a right to recover attorneys' fees, whether via contract or statute.

*///*

**9.  ABANDONMENT OF ISSUES**

CORONA advises it presently does not intend to pursue the affirmative defenses that were not discussed above: 2 (statute of limitations), 5 (estoppel), 8 (unclean hands), 13 (laches), 14 (no good faith), 17 (lack of notice), 19 (Prop. 51 apportionment of non-economic damages), 23 (verbal statements), 25 (verbal statements), and 28 (fraud / misrepresentation).

DATED:  March 10, 2020                    HORTON, OBERRECHT, KIRKPATRICK & MARTHA

By:  _____
          Cheryl A. Kirkpatrick
          Peter C.L. Chen
          Attorneys for Corona Seeds, Inc.

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

     I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is:  HORTON, OBERRECHT, KIRKPATRICK & MARTHA, 3 Park Plaza, Suite 350, Irvine, California 92614.

     On March 10, 2020, I served the foregoing document described as:  **Corona Seeds, Inc.'s Memorandum of Contentions of Facts and Law,** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated on the attached service list:

[ ]   **BY MAIL** – I deposited such envelope in the mail at Irvine, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than (1) day after the date of deposit for mailing in affidavit.

[ ]   **BY PERSONAL SERVICE** – I caused such envelope to be delivered by a process server employed by [name of process server].

[ X ]   **BY ELECTRONIC TRANSMISSION** – I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) indicated.

[ X ]  (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on March 10, 2020, at Irvine, California.

_____

Crystal Thompson

1

## SERVICE LIST

2

Agricola Cuyuma SA v. Corona Seeds, Inc., et al.

3 United States District Court Central District of California: 2:17-cv-8220 DMG (SKx)

4

| | |
|---|---|
| Panda Kroll, Esq.<br>Law Offices of Panda Kroll<br>5999-B Ridgeview Street<br>Camarillo, CA 93012<br>Phone: (805) 764-0315<br>Fax: (805) 764-0339<br>Email: pkroll@pandakrollesq.com | Co-Counsel for Defendant Corona Seeds, Inc. |
| Bruce Alan Finck, Esq.<br>BENTON, ORR, DUVAL &<br>BUCKINGHAM<br>39 N. California Street<br>Ventura, CA 93001<br>Phone: (805) 648-5111<br>Fax: (805) 648-7218<br>Email: bfinck@bentonorr.com | Counsel for Defendant Corona Seeds, Inc. |
| Brian Nomi, Esq.<br>Law Office of Brian Nomi<br>215 E. Daily Drive, Suite 28<br>Camarillo, CA 93010<br>Phone: (805) 444-5960<br>Fax: (805) 357-5333<br>Email: briannomi@yahoo.com | Co-Counsel for Plaintiffs Agricola Cuyuma SA and Corporacion Agricola Vinasol S.A.C. |
| Eduardo Ayala Maura, Esq.<br>Ayala Law P.A.<br>1390 Brickell Avenue, Suite 335<br>Miami, FL 33131<br>Phone: (305) 570-2208<br>Fax: (305) 305-7206<br>Email: eayala@ayalalawpa.com | Co-Counsel for Plaintiffs Agricola Cuyuma SA and Corporacion Agricola Vinasol S.A.C. |
| Jason F. Meyer, Esq.<br>J. Todd Konold, Esq.<br>Zorik Haruthunian, Esq.<br>GORDON REES SCULLY<br>MANSUKHANI, LLP<br>101 W. Broadway, Suite 2000<br>San Diego, CA 92101 | Counsel for Crites Seed, Inc. |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tel: (619) 230-7468
Fax: (619) 696-7124
Email: jmeyer@grsm.com;
tkonold@grsm.com;
rharuthunian@grsm.com