**HORTON, OBERRECHT & KIRKPATRICK**
Cheryl A. Kirkpatrick, Esq. (SBN 149906)
Fang Li, Esq. (SBN 250464)
3 Park Plaza, Suite 350
Irvine, CA 92614
PH:  (949) 251-5100
FX:  (949) 251-5104
Email: ckirkpatrick@hortonfirm.com / fli@hortonfirm.com

Attorneys for Defendant Corona Seeds, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Agricola Cuyuma SA;<br>Corporacion Agricola Vinasol SAC;<br><br>                      Plaintiffs,<br>v.<br><br>Corona Seeds, Inc. and<br>Crites Seed, Inc.<br><br>                      Defendant. | **CASE NO. 2:17-cv-8220 DMG (SKx)**<br><br>**CORONA SEEDS, INC.'S TRIAL BRIEF**<br><br>**District Judge: Hon. Dolly M. Gee**<br><br>Complaint Served: December 21, 2017<br><br><br>Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Steve Kim |

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **TABLE OF CONTENTS** | | i |
| **TABLE OF AUTHORITIES** | | ii |
| I. | **PLAINTIFFS' ALLEGATIONS OF DISEASED SEEDS** | 2 |
| | A. **SENASA Test Re: Stemphylium sarciniforme** | 2 |
| | B. **Dr. Mattos Calderon's Tests** | 3 |
| | C. **SGS-Portugal's Testing of Pathogens** | 5 |
| |    1. **Unreliability of NGS Testing** | 6 |
| |    2. **All of the Bacteria and Fungus Except Pythium Identified Are Not Pathogenic to Peas** | 6 |
| |    3. **There is No Evidence that There Was A Pythium Species Pathogenic to Peas** | 7 |
| | D. **The Court's Gatekeeping Role** | 9 |
| II. | **CONCLUSION** | 11 |

# TABLE OF AUTHORITIES

**Case Law**

| | |
|---|---|
| *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 592 (1997) | 9 |
| *Hathaway v. Bazany*, 507 F.3d 312, 317-319 (5th Cir. 2007) | 9 |
| *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999) | 9 |
| *Menz v. New Holland North America, Inc.* 507 F.3d 1107, 1114-1115 (8th Cir. 2007) | 9 |
| *Riegel v. Medtronic, Inc.,* 451 F.3d 104 (2d Cir. 2006) | 9 |
| *Stilwell v. Smith & Nephew, Inc.* 482 F.3d 1187, 1192 (9th Cir. 2007) | 9 |
| *ZF Meritor, LLC v. Eaton Corp.* 696 F.3d 254, 293-294 (3rd Cir. 2012) | 2 |

**Statutes**

| | |
|---|---|
| FRE 401 | 10 |
| FRE 403 | 11 |
| FRE 702 | 9, 10 |
| FRE 703 | 9 |

**Rules**

| | |
|---|---|
| L.R. 16-10 | 1 |

# CORONA'S TRIAL BRIEF

Pursuant to L.R. 16-10, Defendant Corona Seeds, Inc. ("Corona") respectfully submits the following Trial Brief.

## I.  PLAINTIFFS' ALLEGATIONS OF DISEASED SEEDS

In this case, Plaintiffs Agricola Cuyuma SA and Corporacion Agricola Vinasol SAC (collectively, "Plaintiffs") claim that the sapphire pea seeds from lot 606 supplied by Corona were infected with certain pathogens. Specifically, Plaintiffs intend to offer evidence of testing from SENASA, Dr. Mattos Calderon and SGS-Portugal that identified certain bacterial and fungal organisms in the seeds. With this evidence, Plaintiffs, through their plant pathology expert Michael Coffey ("Coffey"), intend to show that Corona's seeds contained certain bacteria and fungi that contaminated not only the fields where the sapphire peas were planted but also adjacent fields containing other crops.

### A.  SENASA Test Re: Stemphylium sarciniforme

On November 8, 2016, SENASA purportedly found the presence of a fungus called *Stemphylium sarciniforme* in the lot 606 seeds. With this information, Coffey intends to opine that the seeds brought this fungus into Plaintiffs' fields that affected the pea and surrounding crops. Initially, Coffey testified at deposition that he is not affiliated with SENASA and has no information on the methodology of SENASA's testing. Expert testimony based on data prepared by persons not known to the testifying witness, who lacks knowledge as to the methodology used to create the data, does not meet reliability requirements for admission. *ZF Meritor, LLC v. Eaton Corp.* 696 F.3d 254, 293-294 (3rd Cir. 2012).

Notwithstanding the above, Corona contends that *Stemphylium sarciniforme* is not pathogenic to peas. At trial, Corona's plant pathology expert Steve Koike will opine that this fungus is not a pathogen of pea based on all known literature including the American Phytopathological Society ("APS") Compendium of Pea Diseases and the U.S. Department of Agriculture ("USDA") list of pea diseases. In addition, at deposition, in

///

2

**DEFENDANT CORONA SEEDS, INC.'S TRIAL BRIEF**

response to the question of whether this fungus is pathogenic to peas, Plaintiffs' plant pathology expert Coffey testified as follows:

> "Q: Is *Stemphylium sarciniforme,* is this an organism that's pathogenic to sapphire peas?
>
> A: I don't know – no, I'll say I don't know.
>
> Q: So is it fair to say that you're not going to give an opinion that *Stemphylium sarciniforme* had anything to do with the crop loss in this case?
>
> A: I could give an opinion if I knew the details of how it was isolated, you know, what the state of the plant germination was or was it indeed a seedling, where it was isolated from, what methods were used to isolate it, what methods were used to identify it.
>
> Q: So you don't know as you sit here today whether they tested the seed, the stem, the plant, you don't have that information right now; correct?
>
> A: No, I don't have it, no.
>
> Q: Assuming there was a test on the plant, is that something that would have affected the crop loss claims that plaintiffs have in this case?
>
> A: No."

Coffey's testimony above cements his lack of knowledge of the SENASA testing methodology. Therefore, he has no opinion about whether *Stemphylium sarciniforme* had anything to do with Plaintiffs' claims in this case. More importantly, Coffey admitted that this fungus, if found on the plant (as opposed to the seed), would not have affected Plaintiffs' crop loss claims in this case. This is important because SENASA's test was a test on the plant and not the seeds.

### B. Dr. Mattos Calderon's Tests

On February 23, 2017 and March 8, 2017, Dr. Calderon identified the following pathogens on the sapphire lot 606 seeds:

- *Pseudomonas syringae pathovar* (bacteria)
- *Rhizopus* (fungus)
- *Penicillium* (fungus)

Again, Plaintiffs' plant pathology expert Coffey has no information on Dr. Calderon's testing methodology. At deposition, he testified as follows:

> "Q: Is it true that because you do now know the methodology used by Dr. Calderon that you have no opinion on whether or not her testing was in conformance with international standards?
>
> A: No comment.
>
> …
>
> A: I don't have any comment because I don't know enough about that whole process, right, to have any opinion."

Indeed, when Coffey was apprised that Dr. Calderon used the "agar" method, he agreed that this was not a "molecular method" and therefore not in compliance with international standards.

More importantly, Coffey cannot opine that *Pseudomonas syringae pathovar* is pathogenic to sapphire peas in this case. *Pseudomonas* is a bacteria. *Syringae* is one species of the bacteria. *Pathovar* means a set of strains of the species of the bacteria. Coffey testified that he has no knowledge about whether sapphire peas are resistant to this bacteria strain. Without information about the peas' resistance, he cannot know whether it is pathogenic to peas.

Similarly, Coffey cannot opine that *Rhizpus* and *Penicillium* are pathogenic to peas. This is due to the fact that Dr. Calderon's test was not specific enough and did not identify any specific species of *Rhizpus* or *Penicillium.* Without this information, one cannot know whether they are pathogenic to peas. At deposition, Coffey agreed and testified as follows:

> "Q: Are any of those pathogenic to peas?

///

4

**DEFENDANT CORONA SEEDS, INC.'S TRIAL BRIEF**

> A: Okay. So I'm going through very carefully. At the level, well, you know, which is the genus like *Rhuzopus*, *Penicillium* …, it's not possible to say. It's not enough information without species or more detail which species…."
>
> Q: So, based on your understanding, Dr. Calderon's testing did not go far enough to determine the species of certain fungi and bacteria, correct?
>
> A: That's correct, yes."

Dr. Calderon's testing was not specific and thorough enough for anyone to opine that they are pathogenic to peas. Without identifying specific species of organisms, one cannot possibly know because there are hundreds of different species of microorganisms and only a handful of species are actually pathogenic to peas.

### C. SGS-Portugal's Testing of Pathogens

Plaintiffs also intend to admit evidence of SGS-Portugal's testing of the sapphire (lot 606) pea seeds. SGS-Portugal used Next Generation Sequencing ("NGS") to identify pathogens. NGS testing detects relic of fragment DNA on the seeds. However, NGS testing does not show viable or live microorganisms. Regardless, the fragment DNA is then inputted into a database to identify the genus of any microorganisms and any specific species or strains of those microorganisms. If specific species or strains are not contained in the database, the NGS testing will merely identify the name of the genus with "sp." which means an unknown species.

Here, SGS-Portugal's NGS testing identified the following bacteria and fungi:

- *Pantoea sp.* (bacteria)
- *Enterobacteriaceae sp.* (bacteria)
- *Erwini*a sp. (bacteria)
- *Acinetobacter sp.* (bacteria)
- *Stephylium sp.* (fungus)
- *Alternaria sp.* (fungus)

- *Cladosportium sp.* (fungus)
- *Fusarium oxysporum sp.* (fungus)
- *Sclerotinia sp.* (fungus)
- *Crypococcus victoriae* (fungus)
- *Thenatephorus cucumeris* (fungus)
- *Pythium sp.* (fungus)

### 1. Unreliability of NGS Testing

Again, NGS testing detects DNA fragments and not viable microorganisms. In other words, NGS testing does not determine whether the bacteria and fungi were alive or dead at the time of testing. This is crucial because dead DNA fragments of microorganisms on seeds will have no impact on their germination, their health or the health of the plants.

### 2. All of the Bacteria and Fungus Except Pythium Identified Are Not Pathogenic to Peas

Plaintiffs' plant pathology expert Coffey addressed whether the microorganism fragment DNA from SGS-Portugal's NGS testing showed any microorganisms that were pathogenic to peas. With the exception of *Pythium*, Coffey noted that he could not opine about whether they were pathogenic to peas because there is insufficient information from the testing about the species or strains of the microorganism. Coffey testified:

> "Q: As a pathologist based on the information you have right now, isn't it true that you don't have sufficient information about all the microorganisms that were purportedly identified by SGS are pathogenic to peas?
> A: Okay. So not all. *Pythium* is the one I picked out as with all the other data and my knowledge, I might see some *Pythium,* I can say that."

///
///

Without information on specific species or strains, no one can testify about whether the microorganisms that were identified by the NGS testing are pathogenic to peas.

### 3. There is No Evidence that There Was A Pythium Species Pathogenic to Peas

The NGS testing identified *Pythium sp.* on the subject seeds. Plaintiffs' plant pathologist Coffey confirmed that that the SGS-Portugal's NGS testing could not identify a particular species of *Pythium*. He also confirmed that not all species of *Pythium* are pathogenic to peas. There are about 280 species and only about 12 are identified as pathogenic to peas. Again, Coffey does not have enough information on the *Pythium* species found on the seeds to opine that they were pathogenic to peas. Coffey testified:

> Q: I understand that *Pythium ultimum* and perhaps some other species of *Pythium* can be pathogenic to peas, but we can't know because the SGS testing never provided us the species; correct?
>
> A: Correct.

Yet, Coffey's entire theory of the case is that *Pythium* caused damage to the sapphire peas and other crops on adjacent fields. Coffey testified:

> Q: The damage to the crop in this case, is it your opinion that it's because of a particular species of *Pythium* within the seed?
>
> A: I would say, yeah, in terms of all the evidence presented that, right from the beginning, from day one, I was presented with masses of data. And out of that I could see immediately that, you know, *Pythium* was the main player. It's – I admit its prejudiced by my experience, you know. If I were a cancer specialist, I might see if cancer even if it didn't exist. I mean, no one can get out of that possibility. But I weigh that up in terms of what evidence is available, this versus anything else. I don't see any evidence, either symptoms, isolations, or anything else,

///

7

**DEFENDANT CORONA SEEDS, INC.'S TRIAL BRIEF**

> that pinpoints to anything else that would cause it.  So it's by processes
> elimination we are left with this."

Strangely, even though Coffey pins the entire case on *Pythium*, he admits that the damage observed to the pea crop is not consistent with *Pythium*.  He testified:

> "Q:  Are you saying that *Pythium* causes damping-off or certain
> *Pythium* species causes damping-off in pea plants?
> A:  Of course they do.  It's the classic –it's the most important disease
> in peas.
> Q:  Did you see evidence of damping-off with the crops that plaintiffs
> claim –
> A:  No, I did not see any symptoms reminiscent…."

Finally, Coffey admits that *Pythium* is not seedborne which means that *Pythium* cannot survive in pea seeds above ground.  In other words, he admits that living *Pythium* cannot survive in the seeds that were sold by Corona to Plaintiffs in Peru.  However, Coffey has a theory that *Pythium* oospores (a fertilized female zygote or cell) can survive in seeds and that was what was transported from the seeds into the fields in Peru.  However, Coffey cannot rely on any scientific literature that supports his theory.  He testified:

> "Q:  Do you have any – are you aware of any published literature that
> states living oospores of *Pythium* can be inside a pea seed?
> A:  No.
> Q:  Have you researched whether *Pythium* oospores, living organisms,
> can survive in a pea seed?
> A:  No, because this will be a first.  In fact, it would be a good
> publication…."

Clearly, Coffey does not have any scientific basis to opine that *Pythium* was brought into Plaintiffs' fields in Peru through the sapphire seeds sold by Corona.

///

### D. The Court's Gatekeeping Role

The Federal Rules of Evidence assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 592 (1997).  Rule 702 imposes special obligation on the judge to ensure that expert's testimony "is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999). The test for reliability is the soundness of the expert's methodology, not the accuracy of the conclusions. *Stilwell v. Smith & Nephew, Inc.* 482 F.3d 1187, 1192 (9th Cir. 2007). In all cases where expert testimony is offered, the trial judge must find that the testimony is "properly grounded, well-reasoned and not speculative before it can be admitted."  See FRE 702.

In addition, Federal Rules of Evidence 703 states, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonable rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

It is clear that an expert may not base his or her opinion on speculation or conjecture. *Riegel v. Medtronic, Inc.,* 451 F.3d 104 (2d Cir. 2006)(expert's opinion was properly excluded as speculative and unreliable); *Hathaway v. Bazany*, 507 F.3d 312, 317-319 (5th Cir. 2007)(proposed expert's testimony was speculative and unreliable under *Daubert* and thus, it was properly excluded); *Menz v. New Holland North America, Inc.* 507 F.3d 1107, 1114-1115 (8th Cir. 2007)(speculative and unreliable expert testimony was properly excluded).

In this case, all of Plaintiffs' evidence regarding pathogen testing is unreliable because there is no one that will testify as to the testing methodology.  Further, the pathogen testing data is not sufficient to show that any identified microorganisms caused any damages to Plaintiffs' crops of peas. Indeed, Plaintiffs' plant pathology expert Coffey

admits that there is insufficient information to opine about whether these microorganisms are pathogenic to pea.

Coffey admitted that SENASA's test results showing *Stemphylium sarciniforme* were insufficient to opine about whether it had an impact in this case. He admitted that Dr. Calderon's test results regarding *Pseudomonas syringae pathovar*, *Rhizopus*, *Penicillium* were insufficient. He admitted that SGS-Portugal's NGS testing of the *Pantoea sp., Enterobacteriaceae sp., Erwinia sp., Acinetobacter sp., Stephylium sp., Alternaria sp., Cladosportium sp., Fusarium oxysporum sp., Sclerotinia sp., Crypococcus victoriae,* and *Thenatephorus cucumeris* were insufficient.

Given the above, Coffey stakes the entire case on his opinion that *Pythium* must have caused the damage to the pea crop in this case. Initially, he admits that he has insufficient information to determine what specific species of *Pythium* was found on the seeds in the testing and therefore cannot opine on whether the *Pythium* DNA found is *Pythium* that is pathogenic of peas. There are numerous species of *Pythium* and only a handful are pathogenic to peas. Coffey's opinion that the *Pythium* found from the test must be a species that is pathogenic to peas is pure speculation and conjecture and should be excluded.

Coffey admits that Plaintiffs' alleged crop damage is not consistent with *Pythium*; yet still insists on pursuing a theory that *Pythium* was brought to Plaintiffs' field in Peru from the sapphire seeds from Corona. He admits that there is no scientific literature to support the fact that *Pythium* can survive in seed and only posits that it theoretically could. Coffey's opinion is here not well-reasoned or properly grounded to be reliable under Rule 702. It is pure speculation and conjecture on Coffey's part that *Pythium* was brought to Peru through the sapphire seeds. Accordingly, the Court should exercise its discretion and exclude Coffey's opinions regarding *Pythium.*

Given Coffey cannot opine on whether the above microorganisms caused any damage to the subject sapphire pea crop, these test results have no relevance in this case and should be excluded. FRE 401. Even if there is a scintilla of relevance in these tests, any probative value is outweighed by unfair prejudice, confusing the issues, misleading

10

the jury, undue delay or wasting time.  FRE 403.  Indeed, the presentation of this evidence will only prejudice Corona by confusing the issues and misleading the jury.  Even though there is no evidence that these microorganisms are pathogenic to peas, the jury will wonder why these reports are introduced.  The jury may find that if evidence is introduced, there may be a basis that the these microorganisms affected Plaintiffs' crops.  Moreover, the Court has issued strict time limitations for the parties' introduction of evidence (9 hours each side).  Plaintiffs' introduction of these reports about microorganism that are not pathogenic to peas will only cause undue delay and wasting of time.  Thus, evidence of these tests should be excluded at trial and Coffey should be prohibited from testifying about them.

## II.    CONCLUSION

Corona looks forward to addressing the issues outlined above during trial of the captioned matter.

DATED:  June 11, 2021                          HORTON, OBERRECHT & KIRKPATRICK

By:  _____
     Cheryl A. Kirkpatrick
     Fang Li
     Attorneys for Corona Seeds, Inc.

**DEFENDANT CORONA SEEDS, INC.'S TRIAL BRIEF**